# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 07-0558

WILLIAM N. CLEMONS, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

Before KASOLD, HAGEL, and LANCE, *Judges.*

## O R D E R

The appellant, William N. Clemons appeals through counsel a December 6, 2006, Board of Veterans' Appeals (Board) decision that denied his claim for disability compensation for post-traumatic stress disorder (PTSD). Record (R.) at 1-8. The appellant asserts that, although he filed a claim for benefits specifically for "PTSD," the Board should have considered medical evidence he submitted with his claim that shows he is diagnosed with another acquired psychiatric disorder. Appellant's Brief (Br.) at 5-8. In his brief, the Secretary argues that the appellant's claim is limited solely to consideration of entitlement to benefits for the mental disorder labeled "PTSD." Secretary's Br. at 8-11. According to the Secretary, this is because the claim form the appellant filed requested benefits for "PTSD" only, and because he consistently maintained during his appeal that this is the mental condition from which he suffers. *Id.* at 10. The Secretary argues further that, even had a separate claim for another mental disorder been reasonably raised by the record, the Court has no jurisdiction over claims that were not the subject of the Board decision.

On October 28, 2008, the appeal was submitted to a panel of the Court and oral argument was scheduled. On November 13, 2008, the parties submitted joint motions to stay the case. On November 14, 2008, the parties jointly moved to vacate and remand the Board's December 2006 decision. Joint Motion for Remand (JMR) at 1. In the JMR, the parties agreed that the appellant "reasonably raised a claim of entitlement to service connection for an acquired psychiatric disorder in addition to a claim of service connection for PTSD, and that the Board failed to fully adjudicate these inextricably intertwined claims." JMR at 3. The parties requested that the Court vacate and remand the Board's decision for readjudication "[b]ecause the Board did not adjudicate these claims together." *Id.*

On November 18, 2008, the Court denied the parties' motion to stay the proceedings and ordered that oral argument proceed as previously scheduled. In its order, the Court directed the parties to prepare to specifically discuss whether the Court has jurisdiction to grant a JMR that appears to pertain in part to an anxiety disorder claim that was not decided by the Board and is not properly before the Court. *Clemons v. Peake*, No. 07-0558, 2008 WL 5082161 at *1 (Vet.App.

November 18, 2008). For the reasons stated below, we conclude that we have jurisdiction over this matter. Accordingly, the JMR will be granted with clarification as stated in this order, and the December 6, 2006, Board decision will be set aside and the matter will be remanded for further proceedings consistent with this decision.

## I. JMR AND JURISDICTION

The parties' agreement implicates the Court's jurisdiction in two respects and must be clarified. The parties agreed that the appellant's claim for benefits for "PTSD" raised a wholly separate claim for an anxiety disorder, a claim that has neither been developed by the agency of original jurisdiction nor decided by the Board. If this characterization were accurate, the Court would not have jurisdiction over the separate anxiety claim that is a subject of the parties' agreement. *See Jarrell v Nicholson*, 20 Vet.App. 326, 331 (2006) (en banc) (Board lacks jurisdiction over claims not first presented to and adjudicated by the Regional Office (RO)); *King v. Nicholson*, 19 Vet.App. 406, 411 (2006) (Court has jurisdiction to review only those claims that were the subject of the Board decision on review). Accordingly, the Court would be faced with the jurisdictional dilemma of whether it could properly act on a JMR (which, if granted, would result in an order to the agency) that is related to claims not properly before it. *See Jarrell* and *King,* both *supra.*

The mere fact that the parties have reached an agreement that there are two separate claims does not make it so, and does not, by itself, confer jurisdiction on the Court to grant the JMR. It is axiomatic that "no action of the parties can confer subject matter jurisdiction upon a federal court." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982); *see also Mitchell v. Mauer*, 293 U.S. 237, 244 (1934) (jurisdiction cannot be enlarged or conferred by agreement of the parties). We have an independent duty to determine our jurisdiction. *Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th Cir. 1974) (holding that a federal court has the duty to determine its own jurisdiction sua sponte where the issue has not been raised by the parties); *Smith v. Brown*, 10 Vet.App. 330, 332 (1997); *see also Lukosevicz v. Dep't of Labor*, 888 F.2d 1001, 1003 n. (3rd Cir. 1989) (stating with regard to joint motion to vacate the administrative Board decision in that case that "it is inappropriate to take such action without examining the underlying legal issue"). If granted, the JMR in this case would result in an order to the agency to take actions with regard to claims not before the Court; such motions require our careful review to determine any jurisdictional deficiencies.

Although *Jarrell* and *King* stand for the proposition, as stated by the Secretary, that the Court has jurisdiction over matters decided by the Board, the Secretary fails to recognize that the Court also has jurisdiction to remand to the Board any matters that were reasonably raised below that the Board should have decided, with regard to a claim properly before the Court, but failed to do so. *See Bingham v. Nicholson*, 421 F.3d 1346, 1348-49 (Fed.Cir. 2005) (denial of a claim by the Board is a decision as to all potential theories of entitlement, not just those considered and rejected)*; see also Maggitt v. West*, 202 F.3d 1370, 1377 (Fed.Cir. 2000) ("Veterans Court may hear legal arguments raised for the first time with regard to a claim that is properly before the court"); *Barringer v. Peake*,

22 Vet.App. 242, 244 (2008) (the Court has jurisdiction to review whether the Board erred in failing to consider issues reasonably raised).

As discussed below, we conclude that Mr. Clemons's claim for benefits based on PTSD encompassed benefits based on an anxiety disorder and (or) a schizoid disorder because the evidence developed during the processing of the claim indicated that the symptoms for which Mr. Clemons was seeking VA benefits may have been caused by an anxiety and (or) schizoid disorder. Because we find that Mr. Clemons submitted only one claim over which we have jurisdiction, we reject the parties' characterization that Mr. Clemons had multiple, separate claims that were inextricably intertwined. With that clarification, we will vacate the Board decision and grant the parties' JMR.

## II. FACTS

The appellant served in the U.S. Navy from September 1951 to August 1958. R. at 12. He served aboard the _U.S.S. Rochester_ from February 1952 to September 1953 during which time, he asserts, he fired guns at the enemy, unloaded dead bodies of American military personnel from shore, and put them in body bags and then in the ship's freezer. R. at 250. An April 1953 commendation letter states that, "[d]uring the period from 21 November 1951 to 21 April 1952 the _U.S.S. Rochester_ (CA-124) completed a total of twenty-one (21) gun strikes against enemy strong holds and directly supported United Nations Forces ashore by gunfire into enemy front lines. The _U.S.S. Rochester_ also conducted various other harassing and interdiction missions while serving as Flagship for the United Nations Blockading and Escort Force." R. at 144. An April 1953 commendation letter states: "Commander Seventh Fleet commends officers and men of _U.S.S. Rochester_ for outstanding service during tour of duty in Korean Theater. Your accurate guns caused vital damage to enemy installations along Korea's coastline." R. at 225. The appellant's service medical records (SMRs) reveal that he was treated for anxiety in March 1956. R. at 70.

The appellant applied for compensation or pension benefits in May 2002. R. at 103-08. In response to a request for additional information regarding his "claim for disability compensation for a nervous disorder," (R. 115), the appellant described handling dead bodies and reported that he had flashbacks and nightmares twice a week about handling dead bodies. _Id._ The appellant's VA medical records reveal several notations of anxiety disorder. R. at 127, 129, 131, 172. In September 2002, the appellant took the Minnesota Multiphasic Personality Inventory-2 test. The examiner noted that the appellant's test results reflected an individual who had schizoid personality disorder, rather than someone with PTSD. R. at 184-85. A July 2003 VA medical record described the appellant's symptoms as "anxiety disorder multifaceted in origin (COPD, PTSD features)." R. at 178.

In December 2006, the Board determined that a "confirmed diagnosis of PTSD [was] not of record; and, diagnostic testing found that [the appellant] had a schizoid personality disorder." R. at 2. The Board concluded that a "VA examination is not necessary in this case because the record already contains competent and probative evidence regarding potential diagnosis (or lack thereof) concerning PTSD." R. at 4. The Board also found that "the [appellant's] contention regarding PTSD

3

in relation to a non-combat stressor was overtly considered by a VA medical professional in the context of psychiatric testing, and a remand for the purpose of obtaining the exact kind of assessment is not warranted and unnecessary." R. at 4. Accordingly, the Board denied the appellant's claim. The December 2006 Board decision did not discuss the possibility of service connection for any other acquired psychiatric disorders.

## III. ANALYSIS

Although the parties have agreed in their JMR that this case involves two separate claims that are inextricably intertwined, they originally presented opposing arguments. The Secretary argued that Mr. Clemons was raising on appeal a claim for an anxiety disorder that was separate from his claim for benefits based on PTSD, and he further argued that, because the Board had not addressed that claim, the Court lacked jurisdiction. Mr. Clemons, on the other hand, argued that he had one claim for benefits and the Board erred by not addressing the evidence indicating that the symptoms for which he was seeking benefits might be caused by an anxiety and (or) a schizoid disorder. However, the appellant did not assert that he had a separate and unadjudicated claim. His initial argument was that he filed a single claim–one for disability compensation based upon a mental disability, and given his multiple medical diagnoses, the Secretary and the Board failed to make findings of fact necessary to correctly determine his current condition relative to the claim that he filed. The Court agrees with the appellant's initial argument that he has one claim and that it was improperly adjudicated.

First, multiple medical diagnoses or diagnoses that differ from the claimed condition do not necessarily represent wholly separate claims. The term "diagnosis" is defined as "[t]he determination of the nature of a disease, injury, or congenital defect." STEDMAN'S MEDICAL DICTIONARY 491(27th ed. 2000). Although an appellant who has no special medical expertise may testify as to the symptoms he can observe, he generally is not competent to provide a diagnosis that requires the application of medical expertise to the facts presented, which includes the claimant's description of history and symptomatology. *See Espiritu v. Derwinski*, 2 Vet.App. 492, 494-95 (1992) (stating that a layperson can provide an account of symptoms but not a diagnosis that requires medical knowledge); *see also Jandreau v. Nicholson*, 492 F.3d 1372, 1376-77 (Fed.Cir. 2007) (noting general competence of laypersons to testify as to symptoms but not medical diagnosis and noting example in n.4 of competence of lay testimony with regard to a broken leg but not a form of cancer).

This principle is also well known to the Secretary as it is often used to discount the probative value of lay statements regarding a claimant's medical condition in deciding the issue of service connection. This is also a reason why pro se claim submissions are not subject to a strict pleading standard. *See Ingram v. Nicholson*, 21 Vet.App. 232, 256 (2007). As a self-represented layperson at the time his claim was filed, the appellant had neither the legal or medical knowledge to narrow the universe of his claim or his current condition to PTSD. *Id.* ("[A] sympathetic reading of the appellant's pleadings cannot be based on a standard that requires legal sophistication beyond that which can be expected of a lay claimant and consider whether the appellant's submissions, considered in toto, have articulated a claim."). *Ingram* made clear that the claimant's intent in filing

a claim is paramount to construing its breadth, especially because "[i]t is the pro se claimant who knows what symptoms he is experiencing that are causing him disability." *Id.* Although the RO has no duty to read the mind of the claimant, the RO should construe a claim based on the reasonable expectations of the non-expert, self-represented claimant and the evidence developed in processing that claim.

In this case, the appellant filed a claim form that identified "P.T.S.D. Korea War" as the "[n]ature of sickness, disease or injuries for which this claim is made." R. at 103. As noted above, the appellant generally is not competent to diagnose his mental condition; he is only competent to identify and explain the symptoms that he observes and experiences. *Espiritu* and *Jandreau,* both *supra*; *see also Layno v. Brown*, 6 Vet.App. 465, 469-70 (1994) (competent testimony limited to what witness actually observed and is in realm of his personal knowledge). Although the appellant's claim identifies PTSD without more, it cannot be a claim limited only to that diagnosis, but must rather be considered a claim for any mental disability that may reasonably be encompassed by several factors including: the claimant's description of the claim; the symptoms the claimant describes; and the information the claimant submits or that the Secretary obtains in support of the claim. Reasonably, the appellant did not file a claim to receive benefits only for a particular diagnosis, but for the affliction his mental condition, whatever that is, causes him. Moreover, the regulation that defines a "[s]ubstantially complete application" says that an application should identify "any medical condition(s) on which it [the claim] is based." 38 C.F.R. § 3.159(a)(3). The inclusion of the plural "condition(s)" indicates that a single claim can encompass more than one condition.

It is not only the reasonable expectations of the appellant or the particular language of the claim form that supports that the Board should have considered alternative current conditions within the scope of the filed claim. The medical evidence submitted in support of the claim clearly raised the issue of the nature of the appellant's current mental condition. The medical evidence indicated diagnoses for an acquired psychiatric disorder, anxiety disorder NOS with PTSD features (R. at 129, 131), and schizoid personality disorder (R. at 184). To deny the appellant's claim for lack of a current mental condition would have been entirely contrary to the medical evidence–it clearly shows there is a diagnosed current mental condition.

Rather, the Board denied the claim because the appellant's hypothesized diagnosis–one he is incompetent to render–proved incorrect, instead of confronting the difficult questions of what current mental condition actually existed and whether it was incurred in or aggravated by service. The Board made no affirmative finding as to the nature of the appellant's condition, it only observed that the appellant was not diagnosed with PTSD. However, because the appellant was reasonably requesting benefits for symptoms of a mental condition he was not competent to medically identify, the adjudication of his claim does not end in the face of currently diagnosed mental conditions that are different from his lay hypothesis in his claim form. It is generally the province of medical professionals to diagnose or label a mental condition, not the claimant. The Board should not limit its consideration of the claim based on the appellant's belief that he suffered from PTSD, something he generally is not competent to render in the first place. *See Jandreau and Espiritu,* both *supra*. Therefore, the Board did not err by failing to adjudicate a separate claim for an anxiety disorder and

5

(or) a schizoid disorder; rather, it erred when it failed to weigh and assess the nature of the current condition the appellant suffered when determining the breadth of the claim before it.

If the competent medical evidence contradicts the claimant's theory or shows a difference of opinion between examiners, it is left to the factfinder to weigh the evidence and determine the nature of the condition–be it one condition that the examiners disagree as to its diagnosis or two or more separate conditions. *See Owens v. Brown*, 7 Vet.App. 429, 433 (1995) ("It is the responsibility of the [Board], not this Court, to assess the credibility and weight to be given to evidence."). If the factfinder cannot answer this question without resorting to speculation or his own opinion, additional medical evidence may have to be developed, unless the medical evidence itself indicates that determining the cause is speculative. *See Colvin v. Derwinski*, 1 Vet.App. 171, 172 (1991) (Board must consider only independent medical evidence, not its own unsubstantiated opinion medical judgment); *compare Roberts v. West*, 13 Vet.App. 185, 189 (1999) (holding that "the fact that [a] medical opinion was inconclusive . . . does not mean that the examination was inadequate.") *with Daves v. Nicholson*, 21 Vet.App. 46, 51-52 (2007) (when medical examiner cannot provide an opinion without certain information, the Secretary has duty to determine if information is reasonably available and, if so, to obtain it and secure additional medical opinion). In this case, the Board did not make any affirmative determinations as to the nature of the appellant's current condition, except to rule out PTSD. The medical evidence suggests that the appellant has an anxiety disorder NOS with PTSD features (*see, e.g.,* R. at 131) that at least one doctor has related to service (R. at 185), and (or) a schizoid disorder (R. at 184). For purposes of the claim and its adjudication, it matters little that the appellant believes his symptoms should be diagnosed as PTSD if the medical evidence establishes that his symptoms are actually something different. And, the fact that the appellant may be wrong about the nature of his condition does not relieve the Secretary of his duty to properly adjudicate the claim.

To be clear, however, quite a different result is reached when the claimant requests compensation for a particular diagnosis but, after proper development, the medical evidence reveals *no* current condition related to the symptoms suffered. For example, had the appellant filed his claim for "PTSD," but no current mental condition whatsoever was diagnosed, the claim could have been properly denied for lack of a diagnosis for any current mental condition. *See* 38 U.S.C. § 1110; *Caluza v. Brown*, 7 Vet.App. 498, 506 (1995) (award of service connection requires medical diagnosis of a current disability) *aff'd* 78 F.3d 604 (Fed. Cir. 1996) (table). Similarly, a different result is reached when the evidence supports the service connection of a disability, but there is no indication the claimant was seeking benefits for that disability or the symptoms he was experiencing that are associated with that disability. *See MacPhee v. Nicholson*, 459 F.3d 1323, 1326-27 (Fed. Cir. 2006) (holding that there must be some intent expressed to apply for benefits and endorsing this Court's holding in *Brannon v. West*, 12 Vet.App. 32, 35 (1998) ("The mere presence of the medical evidence does not establish an intent on the part of the veteran to seek . . . service connection")); *Criswell v. Nicholson*, 20 Vet.App. 501, 504 (2006) ("[W]here there can be found no intent to apply for VA benefits, a claim for entitlement to such benefits has not been reasonably raised."); *see also Talbert v. Brown*, 7 Vet.App. 352, 356 (1995) (Board is not required to conduct "an exercise in

prognostication, but only requires [consideration of] all issues reasonably raised by the appellant's substantive appeal").

The Court notes that, when he filed his claim, the appellant requested compensation for "PTSD," but the medical evidence submitted with his claim diagnosed anxiety disorder NOS as well as schizoid personality disorder. In *Boggs v. Peake*, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) held that "a properly diagnosed disease or injury cannot be considered [on] the same factual basis as [a] distinctly diagnosed disease or injury." 520 F.3d 1330, 1335 (Fed. Cir. 2008). Standing alone, this might be read to suggest that, in this case, the appellant's diagnoses for an anxiety disorder NOS and schizoid disorder constitute medical evidence in support of separate claims based on those distinct diagnoses for which the appellant never filed a claim, as opposed to evidence in support of the claim that he actually filed, which was based on his belief that he suffered from PTSD. However, by its own terms and rationale, *Boggs* is not applicable to, and does not inform us how to determine, the scope of a claim at the time the claim is filed.

Pursuant to section 7104, "when a claim is disallowed by the Board, the claim may not thereafter be reopened and allowed and a claim based upon the same factual basis may not be considered." 38 U.S.C. § 7104(b). The Federal Circuit has informed us that there generally are only two exceptions to this rule of finality. *Cook v. Principi*, 318 F.3d 1334, 1337 (Fed. Cir. 2002) (en banc); *see also DiCarlo v. Nicholson*, 20 Vet.App. 52, 56 (2006) (noting other exceptions). First, section 5108 provides that "[i]f new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary shall reopen the claim and review the former disposition of the claim." 38 U.S.C. § 5108. Second, a final decision is subject to revision on grounds of clear and unmistakable error. *Cook*, 318 F.3d at 1337. In *Boggs*, a veteran experiencing hearing loss symptoms was diagnosed with *conductive* hearing loss. *Boggs,* 520 F.3d at 1332. In 1955, he filed a claim that was denied for lack of a nexus to service. *Id.* Almost 50 years later, the veteran filed a separate application for hearing loss and, during the development of that claim, was diagnosed with *sensorineural* hearing loss. *Id.* On appeal, the Board found that the newly diagnosed sensorineural hearing loss was cumulative of the 1955 diagnosis and denied the request to reopen. *Id.* at 1333. Reviewing the Board's decision, this Court held that the two claims should be considered one claim because they involved the same symptomatology, i.e., loss of hearing; therefore, the Court affirmed the Board's decision that the new diagnosis was not new and material evidence. *Id.*

The Federal Circuit reversed this decision, essentially determining that section 7104 did not apply because the sensorineural hearing loss diagnosis was factually distinct from the conductive hearing loss diagnosis, such that it created a new claim, not a request to reopen the first, finally denied claim. The opinion reasoned that the "'factual basis' of a claim for purposes of 38 U.S.C. § 7104(b) is the veteran's disease or injury rather than the symptoms of the veteran's disease or injury." *Boggs*, 520 F.3d at 1335. It further held that "[t]he proper reading of 38 U.S.C. § 7104(b) and the test thereunder is that claims based upon distinctly diagnosed diseases or injuries must be considered separate and distinct claims." *Id.* at 1337. *Boggs* stands for the proposition that, if there is a final agency decision denying a claim based on a particular diagnosis, and subsequently a new

and different diagnosis is submitted for VA's consideration, the second diagnosis must be considered factually distinct from the first and must be considered to relate to a separate claim.

In contrast to *Ingram*, which addressed the scope of a claim when it is first filed by the claimant, 21 Vet.App. at 236, *Boggs* relies upon a diagnosis to define the scope of a claim only retrospectively–after there has been a finding of fact based upon *competent* medical evidence. In contexts of section 5108 and requests to reopen, this accomplishes a balancing effect that preserves the finality of agency decisions while not precluding veterans from pursuing claims based on evidence of injuries or diseases distinct from those upon which benefits have been denied. *Boggs,* 520 F.3d at 1337. However, the advantages of treating separate diagnoses as separate claims in cases to reopen do not exist where separate diagnoses are rendered for the same reported symptoms during the initial processing of a claim for benefits.

First, when no previous and final Board decision exists, the finality requirement of section 7104(b) and the exception provided in section 5108 are inapplicable, and any jurisdictional constraints with regard to the scope of the claim are absent. Second, if multiple diagnoses for the same symptoms were treated as separate claims outside the section 5108 context, it would actually work to a veteran's disadvantage. Multiple diagnoses may represent subjective differences of opinion as to the nature of one condition, not necessarily multiple separate conditions. *Boggs* did not state a general rule that each new diagnosis presented prior to a final agency decision pertains to an entirely separate claim. Doing so would force a veteran to continually file new claims as medical evidence is developed during his initial claim and potentially could require a veteran to accept a later effective date for diagnoses made later in the process. Moreover, the Secretary would have to process additional claims with proper notice and procedural requirements, lengthening and delaying an already arduous process. Further, because multiple diagnoses may represent subjective differences of opinions of examiners, rather than multiple conditions, the nature of the appellant's current condition may never be properly adjudicated by the Secretary.

The Federal Circuit's decision in *Ephraim v. Brown*, 82 F.3d 399 (Fed. Cir. 1996), is also consistent with this analysis. In *Ephraim*, the Court held that a claim for service connection for PTSD was separate from a claim for an increased rating for a different mental condition that was already service connected. As with *Boggs*, in *Ephraim* there was a prior, final decision on one diagnosis based on competent medical evidence that justified separating the new diagnosis into a separate claim. *Id.* at 401-02. As such, in the instant case, the appellant's diagnoses of anxiety disorder NOS and schizoid disorder, which arise from the same symptoms for which he was seeking benefits, do not relate to entirely separate claims not yet filed by the appellant. Rather, these diagnoses should have been considered to determine the nature of the appellant's current condition relative to the claim he did submit.

The remainder of the parties' agreement is that (1) the Secretary did not comply with the duty to assist because it failed to provide Mr. Clemons with an examination that addressed PTSD and that Mr. Clemons is entitled to an examination that addresses PTSD, and (2) that the Board on remand shall provide an adequate statement of reasons or bases for its conclusion that Mr. Clemons did not

engage in combat. The facts agreed to by the parties on these remaining issues do not implicate the Court's jurisdiction and present facially proper grounds to grant the JMR.

Accordingly, it is

ORDERED that, as clarified in this order, the JMR is GRANTED; it is further

ORDERED that judgment and mandate will issue in accordance with Rules 36 and 41(a) of the Court's Rules of Practice and Procedure.

DATED:   February 17, 2009                                   PER CURIAM.

Copies to:

Sandra W. Wischow, Esq.

VA General Counsel (027)