# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 09-1026(E)

EARL B. THOMPSON, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided November 19, 2010)

*Robert V. Chisholm,* of Providence, Rhode Island, and *Landon Overby* of Washington, D.C., were on the brief for the appellant.

*Will A. Gunn*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Brian R. Rippel*, Deputy Assistant General Counsel; and *Nisha C. Wagle*, all of Washington D.C., were on the brief for the appellee.

Before KASOLD, *Chief Judge*, and LANCE and DAVIS, *Judges*.

KASOLD, *Chief Judge*, filed the opinion of the Court. LANCE, *Judge*, filed an opinion concurring in the result.

KASOLD, *Chief Judge*: Veteran Earl B. Thompson applies through counsel pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d), for an award of attorney fees and expenses. The Secretary argues that compensation under EAJA is not warranted because Mr. Thompson is not a prevailing party and the Secretary's position was substantially justified. For the reasons set forth below, the application will be denied.

## I. BACKGROUND

Mr. Thompson appealed a December 15, 2008, decision of the Board of Veterans' Appeals (Board) that denied his claim for disability compensation for post-traumatic stress disorder. Before the case was decided, the parties filed a joint motion for remand (JMR). Noting that the facts in Mr. Thompson's case are analogous to those referenced in the Court's order in *Clemons v. Shinseki*, 23

Vet.App. 1 (2009), and that "[t]he law, as articulated in *Clemons*, applies to [this] appeal" (JMR at 2), the parties requested a remand for the Board to "consider and address the legal proposition outlined in *Clemons* as it applies to the particular facts of this case" (JMR at 3). The *Clemons* decision had not yet issued when the Board decided *Thompson*; thus, the Board did not have the opportunity to consider the applicability of the then new case to the facts and law as it existed when *Thompson* was decided. The Court summarily granted the parties' JMR. *Thompson (Earl B.) v. Shinseki*, U.S. Vet. App. No. 09-1026 (unpublished clerk's order dated Sept. 29, 2009).

## II. DISCUSSION

### A. Prevailing Party Status Requires an Admission or Finding of Error

It is well established that when a Court remand is based on a JMR, EAJA fees may be awarded only if the JMR is based on an explicit or implicit admission of error contained in the JMR or a recognition of error contained in the Court's order granting the JMR. *See Sumner v. Principi*, 15 Vet.App. 256, 265 (2001) (en banc) ("Because nowhere in his motion did the Secretary acknowledge error, and because, alternatively, in remanding the matter, the Court did not recognize administrative error, the remand was not predicated upon administrative error. The appellant thus is not a prevailing party."), *aff'd sub nom. Vaughn v. Principi*, 336 F.3d 1351 (Fed. Cir. 2003); *Gurley v. Nicholson*, 20 Vet.App. 573, 577 (2007) (denying EAJA fees in the absence of an explicit or implicit admission of error by the Secretary); *Vahey v. Nicholson*, 20 Vet.App. 208, 211 (2006) (finding no explicit admission of error or implicit acknowledgment of error in Court decision); *Briddell v. Principi*, 16 Vet.App. 267, 272 (2002) (Court looks to the words of a JMR to determine whether it was predicated on administrative error). Notably, the JMR in this instance contains no explicit admission by the Secretary of administrative error, and there is no finding of error in the Court's order granting the JMR. Accordingly, EAJA fees may be awarded in this instance only if the JMR reflects an implicit acknowledgment of error by the Secretary.

### B. Parties' Arguments

In support of their positions that the JMR implicitly contained – or did not contain – an admission of error by the Secretary, both parties focus on *Clemons* and whether or not it established new law or merely restated established legal precedent. The Secretary argues that *Clemons* effected

2

a change in law and therefore the JMR was not predicated on administrative error, while Mr. Thompson argues that *Clemons* simply restated established law and therefore the JMR was predicated on administrative error.

At the outset, we note that the parties' primary reliance on whether *Clemons* created new law or applied established legal precedent is misplaced. We have never held that a remand based on a JMR for purposes of considering a statute, a case, or a regulation necessarily entitles an appellant to EAJA fees simply because the law was established prior to a Board decision. Indeed, unless the application of established law reasonably was raised below, either by the claimant or by the record, there would be no error in the Board not addressing it. *Schafrath v. Derwinski*, 1 Vet.App. 589 (1991) (Board must consider and discuss all applicable provisions of law and regulation where they are made "potentially applicable through the assertions and issues raised in the record"); *see also Robinson v. Peake*, 21 Vet.App. 545, 552 (2008) (Board required to consider all issues raised either by the claimant or by evidence of record). And, even in the absence of error below, nothing prevents the parties from jointly agreeing to request that the Court remand a matter for the Board to consider established law, or for any other proper purpose, without an admission of error, or otherwise prevents the Court from granting such a JMR.[1] *E.g., Maggitt v. West*, 202 F.3d 1370, 1377-78 (Fed. Cir. 2000) (holding that this Court has discretion to remand legal issues raised for the first time on appeal). Nevertheless, to the extent a JMR is predicated on a cited case as the basis for remand, the scope of the cited case can be relevant to fleshing out whether there is any implied concession of error. *Gurley*, 20 Vet.App at 577 (noting the scope of *Harris v. Derwinski*, 1 Vet.App. 180 (1991) upon which a JMR was predicated and further noting that the terms of the JMR focused only on judicial economy).

### C. *Clemons* Did Not Establish New Law

Contrary to the Secretary's argument, although *Clemons* was a newly decided case, it did not create new law. In holding that an appellant does "not file a claim to receive benefits only for a particular diagnosis, but for the affliction [caused by] his condition, whatever that is," and that the

---

[1] Given the text of our discussion, our concurring colleague's comment about the parties somehow exercising the Court's discretion to remand a matter is perplexing at best. *See post* at 9. Simply reiterated: The parties request remand; the Court, in its discretion and exercise of its authority, grants or denies the request. A request for remand may be based on error, but it does not have to be based on error.

3

Board errs in not considering alternative conditions within the scope of the claim filed, *Clemons* merely reiterated established principles and law. Indeed, liberal reading of filings by claimants is required by VA regulation, *see Robinson v. Shinseki*, 557 F.3d 1355, 1359 (Fed. Cir. 2009) (38 C.F.R. §§ 20.201 and 20.202 oblige the Secretary to construe arguments "in a liberal manner"), and has been since before the creation of this Court in 1988, *see McGhee v. Brown*, 6 Vet.App. 414 (1994) (noting that 38 C.F.R. § 19.123 has required the Board to construe arguments in a liberal manner since 1983).

Moreover, the emphasis on the intent of a layperson-claimant to determine the scope of a claim is not new. For example, in *EF v. Derwinski*, 1 Vet.App. 324, 326 (1991), although the veteran's claim was for an anxiety disorder and his argument to the Board was based on the regional office's (RO's) denial of schizoaffective disorder and depression, the Court held that "there is nothing magical about the statements actually used," and that the Secretary's statutory duty to assist required a VA examination to determine what, if any, psychiatric disability existed. *See also Ingram v. Nicholson*, 21 Vet.App. 232, 256 (2007) ("[A] sympathetic reading of the appellant's pleadings cannot be based on a standard that requires legal sophistication beyond that which can be expected of a lay claimant and [the Secretary] must consider whether the appellant's submissions, considered in toto, have articulated a claim.").

Similarly, a layperson's general lack of competence to identify the specific medical condition ailing him has been recognized since the beginnings of the Court, *e.g., Espiritu v. Derwinski*, 2 Vet.App. 492 (1992), as has the requirement to give a sympathetic reading to veteran's filings by "determining all potential claims raised by the evidence, applying all relevant laws and regulations," *Roberson v. Principi*, 251 F.3d 1378, 1384 (Fed. Cir. 2001); *Szemraj v. Principi*, 357 F.3d 1370, 1373 (Fed. Cir. 2004) (same); *see also Kelly v. Nicholson*, 463 F.3d 1349 (Fed. Cir. 2006) (finding Agency error based on the Secretary's "failure to consider all evidence and material of record before deciding a material issue on the merits," and noting that the two "diagnoses were not separate claims, merely two means of establishing the same end – the service connection claim"); *Schafrath*, *supra*.

And, perhaps most tellingly, the primary issue in *Clemons* was the Court's jurisdiction; underlying that issue was a JMR in which the parties acknowledged the established law, specifically, the Board's duty to "adjudicate all issues reasonably raised by a liberal reading of the appellant's

4

substantive appeal," *Clemons* JMR at 2 (citing *Soloman v. Brown*, 6 Vet.App. 396, 402 (1994)), and the Secretary's duty to investigate "all possible in-service causes of [a] current disability, including those unknown to the veteran, *id*. (citing *Schroeder v. West*, 212 F.3d 1265, 1271 (Fed. Cir. 2000)). The Secretary also explicitly admitted error in the *Clemons* JMR when he agreed that "the Board failed to fully adjudicate these inextricably intertwined claims." *Id*. at 3. Thus, even prior to the issuance of *Clemons*, the Secretary was well aware of his duty to liberally read claims.[2]

### D. Application of Law

Although the Secretary could have agreed in the JMR that a remand was necessary because the Board erred, or failed to adequately address the law or evidence, he did not do so. Inasmuch as *Clemons* did not create new law, the Secretary implicitly could have acknowledged error by stating, for example, that the Board *should have* addressed the issues raised in *Clemons*, or that the issues addressed in *Clemons* reasonably were raised below in the *Thompson* Board decision and therefore the matter should be remanded for the Board to address them.[3] But, the Secretary did not do so.

Rather, there is no admission or recognition, explicit or implicit, of failure by the Board, and there is no admission or recognition, explicit or implicit, that an issue reasonably was raised below and should have been discussed, or that there was any error below. Indeed, both parties left wholly unanswered whether they believed the Board erred in its decision. The JMR merely states that "the Board should address the legal proposition outlined in *Clemons*" (JMR at 3), and the Court granted this motion without discussion.

The JMR clearly was predicated on the parties' joint desire that the Board consider the impact, *if any*, of the *Clemons* decision in the first instance, something that the Board did not earlier have the opportunity to do because *Clemons* had not issued from the Court at the time of the Board decision. Thus, rather than containing an admission of error, explicit or implicit, the JMR merely evinces an intent of the parties that, whatever each may have thought was the scope of *Clemons*, they

---

[2] Our concurring colleague's assertion that *Clemons* clarified our jurisdiction is inapposite. As noted in the text above, the duty of the Secretary to process claims based on symptoms complained of and not simply on self-proclaimed diagnosis was the law before *Clemons*, and was so recognized by the Secretary (whether it was termed as one claim or two).

[3] Contrary to our concurring colleague's suggestion that some kind of "magic language" is needed to constitute an admission of error, *see post* at _, it takes any language explicitly or impliedly admitting error to establish prevailing party status. *E.g.*, *Gurely* and *Vahey*, both *supra*.

wanted it considered by the Board. There is nothing wrong with two parties agreeing to forego further litigation if they can agree to have a matter settled or addressed below.[4] Indeed, the "Court has always attempted to encourage and facilitate the expeditious and efficient resolution of cases before it." *Boggs v. Brown*, 10 Vet.App. 320, 321 (1997); *see also* 38 U.S.C. § 7252(a) (Court may "remand the matter, as appropriate"), *Maggitt*, *supra*.

Our concurring colleague's suggestion that we should determine in the first instance whether a JMR was based on administrative error is contrary to both our caselaw, *e.g.*, *Gurely* and *Vahey*, both *supra*, and the Supreme Court's decision in *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598 (2001), which requires that prevailing party status be based on a judicial imprimatur in the underlying merits decision. As explained in *Briddell, supra*, to find that the Court may, at the EAJA stage, make a finding on what the parties actually meant in their joint motion on the merits would create an ex post facto "judicial imprimatur" in violation of *Buckhannon*. 16 Vet.App. at 272-73 (also noting that it would be "a highly anomalous result for the Court to defer consideration of these issues on the merits, but then take them on at the EAJA stage, when such a Court decision could well end up being made so late in the process that the Board had already made its decision on remand"); *see also Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation."); *Vaughn*, 336 F.3d at 1359 ("The Supreme Court [in *Buckhannon* and *Hensley*] was concerned with litigation over 'entitlement to an award,' as well as over litigation over appropriate hours expended and hourly rates." (citing *Buckhannon*, 532 U.S. at 609 (citing *Hensley*, 461 U.S. at 437))).

Because the JMR in this instance was based solely on the parties' agreement to remand the case for Board consideration and discussion of *Clemons* without any admission, recognition, or other discussion of error as a reason for remand, and because the order granting the motion contains no further discussion of this issue or finding of error, Mr. Thompson does not demonstrate that he is a prevailing party. *See Sumner* and *Vahey*, both *supra*. Accordingly, Mr. Thompson is not entitled

---

[4] Our concurring colleague apparently has a fundamental difference of opinion as to whether a JMR can be granted even in the absence of an admission or recognition of error, but his opinion is not based in the law. If it were, there would be no need for an admission or recognition of error in the JMR to establish prevailing party status, which is a well established requirement. *E.g.*, *Gurely* and *Vahey*, both *supra*.

to compensation under EAJA for attorney fees and expenses. *Id*. (successful EAJA application requires, inter alia, that the appellant be a prevailing party).

## III. CONCLUSION

Having determined that Mr. Thompson is not entitled to an EAJA award because he is not a prevailing party, the parties' arguments regarding substantial justification are moot. *Id*. at 210-12 (EAJA application denied without discussion of substantial justification after Court found appellant was not a prevailing party).

For the foregoing reasons, the EAJA application is DENIED.


LANCE, *Judge*, concurring: While I agree that the EAJA application must be denied in this case, I cannot agree with the majority's analysis. This opinion perpetuates the fallacy that the Court can remand cases without any apparent basis for exercising its authority. *See Vahey v. Nicholson*, 20 Vet.App. 208, 214 (2006) (Lance, J., dissenting) (arguing it was inappropriate to deny the appellant prevailing party status without determining the basis of the remand). Even if the parties dispute the proper interpretation of their agreement, I believe it is the responsibility of the Court to determine the basis of the relief stated if necessary to resolve an EAJA application. The approach taken by the majority transfers the decision to award or deny EAJA fees to the Secretary regardless of whether the relief specified is tantamount to a material victory for the appellant. Accordingly, I cannot endorse the majority's approach.

The essential deficiency of the majority's analysis is that it purports to acknowledge that a JMR can contain an implicit admission of error and then renders that acknowledgement meaningless by holding that the Court cannot find an implicit admission by looking at the authority relied upon to support the JMR. As a result, it is not apparent that there is any possible way for the Court to find an implicit admission of error in practice. In my view, if the stated basis of a JMR is law that was in effect at the time of the Board's decision — such as a citation to a case that predates the Board's decision — then the JMR is based upon administrative error even though it does not contain an explicit admission of such.

7

Rather than conduct a logical analysis of the JMR, the opinion spends four paragraphs on an irrelevant and incorrect analysis of our decision in *Clemons*. The discussion is irrelevant inasmuch as the opinion freely admits that its analysis has no impact on the outcome of this case. *Ante* at 5. The discussion is incorrect because it egregiously misstates the issue raised in *Clemons*. The issue in *Clemons* was not whether the Secretary has a duty to sympathetically read claims or whether the Board has a duty to discuss all issues raised by the record. If those were the actual issues in *Clemons*, then there would have been no need for a panel decision on whether or not to grant the JMR in that case. Rather, the issue in *Clemons* was "whether the Court has jurisdiction to grant a JMR that appears to pertain in part to an anxiety disorder claim that was not decided by the Board and is not properly before the Court." 23 Vet.App. at 2 (citing *Clemons v. Peake*, No. 07-0558, 2008 WL 5082161, at *1 (Vet. App. Nov. 18, 2008)). In *Clemons*, the parties "agreed in their JMR that [that] case involve[d] two separate claims that are inextricably intertwined." 23 Vet.App. at 4. After the Court sua sponte raised the potential jurisdictional defect, the Secretary argued that the Court lacked jurisdiction to grant the JMR to the extent that it addressed the merits of an inextricably intertwined claim that was not decided by the Board in the decision on appeal based upon the then-recent decision of the U.S. Court of Appeals for the Federal Circuit in *Boggs v. Peake*, 520 F.3d 1330 (Fed. Cir. 2008). *Clemons*, 23 Vet.App. at 4. Ultimately, the Court agreed that it lacked jurisdiction over a claim not decided in the Board decision on appeal but concluded that the parties were mistaken in characterizing the matter as two inextricably intertwined claims rather than a single claim with multiple diagnoses. *Id.* at 9; *see also Jarrell v Nicholson*, 20 Vet.App. 326, 331 (2006) (en banc) (both the Court and the Board lack jurisdiction over a claim not first presented and adjudicated by a regional office).

Hence, *Clemons* was in no way a decision about the Secretary's duties to treat pleadings sympathetically. Rather, it was unambiguously a jurisdictional decision about identifying the scope of a claim. Prior to *Clemons* — and especially in light of *Boggs* — it was possible, if not likely, for the Board to conclude that it did not have jurisdiction over an issue raised by the record if the issue pertained to a diagnosis other than the one used by the regional office in deciding the claim. After *Clemons* it should be clear to the Board that it is not jurisdictionally barred from addressing errors that pertain to an alternative diagnosis for the same set of symptoms. Therefore, *Clemons* was

clearly new law in holding that the scope of the Board's jurisdiction was broader than previously understood, and the majority's opposite conclusion is indefensible.

The second half the opinion's analysis fares no better than the first. After concluding that *Clemons* was not new law, the majority holds that the appellant is not a prevailing party because the JMR "was based solely on the parties' agreement to remand for Board consideration and discussion of *Clemons* without any admission or other discussion of error." *Ante* at 6. However, this holding merely begs the question: If this was not a remand based upon administrative error even though *Clemons* was not new law, then what was the basis for ordering the Board to reconsider this case? It would seem from the majority's analysis that there was no basis for remanding this case. It was neither a remand based upon error nor a remand to consider new law. Apparently, it was a remand at the whim of the parties.

The majority acknowledges as much, but concludes that the parties have such power because the Court has the discretion to remand a case in certain circumstances when an issue is raised for the first time on appeal. *Ante* at 3 (citing *Maggitt v. West*, 202 F.3d 1370, 1377-78 (Fed. Cir. 2008)). I am highly skeptical of the assertion that parties have the right to invoke a discretionary power of the Court in a JMR. However, even assuming that the parties may exercise the Court's discretion to remand a case without a finding of error, the analysis in this case would still be flawed. First, it is simply illogical to conclude — as the majority implicitly does — that the Board's failure to address an issue reasonably raised by the record can be an appropriate basis for a *Maggitt* remand. If an issue was raised by the record before the Board, then it is not being raised for the first time on appeal to the Court. *See Zuberi v. Nicholson*, 19 Vet.App. 541 (2006) (awarding EAJA fees where the JMR directed the Board to address a regulation that it had failed to consider in its initial decision). Second, and more importantly, the majority creates a default rule that a JMR will be interpreted as a *Maggitt* remand if it does not contain magic language admitting error. If anything, the default rule should be that a JMR based upon law that was clearly established prior to the Board decision is a remand based upon an implicit admission of error. Only if the JMR purports to invoke *Maggitt* would I even reach the issue of whether the parties can exercise a discretionary power of the Court in a JMR.

9

Contrary to the majority's opinion, I do not believe the question of whether a JMR confers prevailing party status depends upon the Secretary's willingness to admit error in the motion. Rather, I believe that the determination of whether there was an implicit admission of error should be based upon an objective analysis of the relief agreed upon in the motion. As this Court recognized in *Zuberi*, whether an appellant is a prevailing party depends upon whether the relief obtained from the Court represents a material alteration in the relationship between the parties on the merits. 19 Vet.App. at 547. In cases where the parties dispute prevailing party status in a case remanded by agreement, it is the responsibility of the Court to examine the specific relief stated in the order and make an independent determination. As pertains to the agreement in this case, prevailing party status is not conferred where the relief obtained is "'only the opportunity for further adjudication.'" *Id.* at 546 (quoting *Akers v. Nicholson*, 409 F.3d 1356, 1359 (Fed. Cir. 2005)). As quoted in the majority's opinion, the relief stated in the JMR was a remand to "'consider and address the legal proposition outlined in *Clemons* as it applies to the particular facts of this case.'" *Ante* at 1 (quoting JMR at 3). This clearly falls within the category of a remand only for further adjudication to consider intervening law, which does not confer prevailing party status. *See Zuberi*, 19 Vet.App. at 546 (citing *Akers*, 409 F.3d at 1357). Therefore, I would deny prevailing party status based upon an analysis of the relief stated in the JMR rather than the Secretary's refusal to concede error.

The authorities cited by the majority are not contrary to my position. First, in *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, there was no agreement between the parties. 532 U.S. 598 (2001). Instead, the merits case supporting the EAJA petition was dismissed as moot when the statute at issue was amended to eliminate the provision in contention. *Id.* at 601. The Supreme Court affirmed the denial of attorney fees and held that EAJA fees could not be awarded on a "catalyst" basis where the relief obtained was not achieved through any kind of enforceable court order. *Id.* at 609-10. The Court specifically held that EAJA does not provide courts with "'roving authority . . . to allow counsel fees as costs or otherwise whenever the courts might deem them warranted.'" *Id.* at 610 (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 260 (1975)). I do not advocate the exercise of any type of "roving authority." I merely take the position that the Court may conclude that the relief specified in the

JMR was based upon administrative error even though the Secretary refuses to incorporate language explicitly conceding error.

Our decision in *Sumner v. Principi* is also easily distinguished. 15 Vet.App. 256 (2001) (en banc). In that case, the appellant filed new evidence with the Board after its decision and the Court granted the Secretary's unopposed motion to remand the case after the Board Chairman indicated that he was inclined to grant the appellant's motion for Board reconsideration to consider the new evidence. *Id.* at 257. The Court considered the Supreme Court's then-recent decision in *Buckhannon* and concluded that EAJA fees could not be awarded because the resolution did not "materially alter the legal relationship of the parties." *Id.* at 264. Nothing in *Sumner* stands for the proposition that the relationship between the parties cannot be materially altered by a JMR unless the Secretary explicitly concedes error. In my view, EAJA fees should turn on the nature of the relief stated in the JMR rather than the Secretary's willingness to include magic language. The majority's magic-language approach to EAJA analysis gives the Secretary the power to deny EAJA fees even in cases where the relief stated cannot be interpreted as anything other than a concession of error. Although I have so far seen no evidence that the Secretary has misused the power created in *Vahey*, there is no reason to create a situation where the Secretary can pit counsel against client by offering a JMR that effectively requires counsel to forgo EAJA fees so that the client can obtain relief that can be understood only as based upon administrative error by the Board. Accordingly, I cannot concur in the majority's analysis.