Citation Nr: 1237362 
Decision Date: 10/31/12 Archive Date: 11/09/12

DOCKET NO. 04-38 208 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Phoenix, Arizona


THE ISSUES

1. Entitlement to service connection for diabetes mellitus. 

2. Entitlement to a rating in excess of 10 percent for bilateral pes planus with metatarsalgia and bone spurs.


REPRESENTATION

Appellant represented by: The American Legion


WITNESSES AT HEARING ON APPEAL

Appellant and G.S.

ATTORNEY FOR THE BOARD

D. Van Wambeke, Counsel


INTRODUCTION

The Veteran served on active duty from August 1990 to October 1994.

This matter originally came to the Board of Veterans' Appeals (Board) on appeal from a June 2003 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in San Diego, California and a July 2006 rating decision of the RO in Waco, Texas. The RO in Phoenix, Arizona, currently has jurisdiction of the claims. 

The Veteran and G.S. testified at a personal hearing before the undersigned Veterans Law Judge in September 2008. A transcript is of record.

In pertinent part, an April 2009 Board decision denied the claim for an increased rating for bilateral pes planus and remanded the claim for service connection for diabetes mellitus. The Veteran appealed that decision to the United States Court of Appeals for Veterans Claims (Court), which vacated that part of the April 2009 Board decision that denied the Veteran's claim for an increased rating and remanded the case to the Board for readjudication consistent with a Joint Motion. 

In a June 2010 decision, the Board denied the claim for service connection for diabetes mellitus and remanded the claim for an increased rating for bilateral pes planus pursuant to the actions as outlined in the Joint Motion. The Veteran appealed that decision. The Court vacated that part of the Board decision that denied the claim for service connection and remanded the case to the Board for readjudication consistent with a Joint Motion.

In an October 2011 decision, the Board remanded the claim for service connection for diabetes mellitus and denied the claim for an increased rating for bilateral pes planus. The Veteran again appealed the Board's decision to the Court. The Court vacated that part of the Board decision that denied the claim for an increased rating and remanded the case to the Board for readjudication consistent with a Joint Motion. 

The actions directed by the Board in its October 2011 decision as they pertain to the claim for service connection for diabetes mellitus have been accomplished and the matter returned for appellate review. 

The medical evidence of record contains diagnoses of both type I and type II diabetes mellitus. The Veteran's claim has been recharacterized as reflected on the title page. See Clemons v. Shinseki, 23 Vet. App. 1 (2009); Brokowski v. Shinseki, 23 Vet. App. 79 (2009). 

The appeal is REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC. VA will notify the appellant if further action is required.


REMAND

The Board remanded the claim for service connection for diabetes mellitus in October 2011 in pertinent part to obtain the Veteran's complete record of treatment from the Brooke Army Medical Center at Fort Sam Houston, specifically to include records associated with a pregnancy resulting in the birth of a child in March 1992. Those records have been obtained and reveal that the Veteran was noted to be an insulin-dependent diabetic in October 1991, while receiving prenatal care during a period of active duty service. This information was not available at the time of the November 2009 VA examination. Given the foregoing, the claim must be remanded in order to obtain another VA examination. Another VA examination is also needed in relation to the claim for a rating in excess of 10 percent for bilateral pes planus with metatarsalgia and bone spurs, as outlined in the Joint Motion.

As the claim for service connection is being remanded for another VA examination, the Board finds that efforts should be made to determine whether the Veteran's complete record of VA treatment has been obtained. The Veteran has reported living in Texas, California, and Florida. Review of the claims folder reveals that she has also lived in Louisiana and is currently living in Arizona. Records from the VA facilities in Alexandria, Louisiana; Loma Linda, California; and Tampa, Florida, have been obtained, but it is not clear whether these comprise the Veteran's complete records from these facilities. There are no VA treatment records from any facilities in Texas or Arizona. On remand, VA should make efforts to obtain any outstanding VA treatment records. 

The crux of the Veteran's service connection claim is that she developed gestational diabetes which was later diagnosed as type I diabetes mellitus. More recently, she has reported that she is a type II diabetic. The October 1991 in-service treatment record associated with the prenatal care the Veteran received prior to the March 1992 birth of her second child is the earliest record indicating that the Veteran was diabetic. The next available evidence of record indicating that the Veteran is diabetic is dated in 2002. 

The medical evidence of record reveals that the Veteran has provided conflicting information as to when she was first diagnosed with diabetes mellitus, to include at the age of 18, which would be prior to service, during an in-service 1994 pregnancy (with birth after the Veteran's discharge from service in October 1994), and in 2000. There are no records dated prior to the Veteran's August 1990 entry into service and it does not appear that an examination was conducted prior to the Veteran's August 1990 entrance into active duty. In addition, the records associated with the Veteran's 1994 pregnancy do not contain a diagnosis of diabetes mellitus. 

Service treatment records reveal that the Veteran delivered her first child in March 1988 at Brooke Army Medical Center at Fort Sam Houston. The Board acknowledges that this was not during a period of active duty service, but given the assertions raised by the Veteran, the fact that the Veteran has provided conflicting information as to when she was first diagnosed with diabetes mellitus, and the fact that this is a military facility, efforts should be made to obtain these records. 

The Veteran is hereby notified that it is her responsibility to report for any scheduled examination and to cooperate in the development of the case, and that the consequences of failing to report for a VA examination without good cause may include denial of the claim. 38 C.F.R. §§ 3.158 and 3.655 (2011). 

Accordingly, the case is REMANDED for the following action:

1. Obtain the Veteran's complete treatment records from the Alexandria VA Health Care System; James A. Haley Veterans' Hospital; and VA Loma Linda Healthcare System. 

2. Determine whether the Veteran received any VA treatment while living in Texas and/or Arizona and make efforts to obtain her complete records from facilities in those states. 

3. Make arrangements to obtain the Veteran's record of prenatal care and delivery of a baby in March 1988 at Brooke Army Medical Center at Fort Sam Houston. The birth certificate associated with this birth indicates that the Veteran's last name at the time of delivery was Ramos. Document all efforts made in this regard. 

4. When the foregoing development has been completed, schedule the Veteran for an appropriate VA examination, preferably with an endocrinologist, to determine the nature and likely etiology of her diabetes mellitus. 

The entire claims file (i.e. the paper claims file and any medical records contained in Virtual VA, CAPRI, and AMIE) must be reviewed by the examiner in conjunction with the examination. If the examiner does not have access to Virtual VA, any relevant treatment records contained in Virtual VA file that are not available on CAPRI or AMIE must be printed and associated with the paper claims file so they can be available to the examiner for review. Any indicated studies are to be performed. 

The examiner should identify what type of diabetes mellitus the Veteran currently has and provide an opinion as to whether it is at least as likely as not (i.e., probability of 50 percent or greater) that any currently diagnosed diabetes mellitus had its onset during active service or is related to any in-service disease, event, or injury, to include the October 1991 determination during prenatal care that the Veteran was an insulin-dependent diabetic. 

The examiner should note that the Veteran has given conflicting information as to when she was diagnosed with diabetes, to include reporting that it onset at the age of 18 (prior to service), during a 1994 in-service pregnancy prior to her October 1994 discharge from service, and in 2000. The examiner should also note that it does not appear an examination was conducted prior to the Veteran's August 1990 entry into active duty and that the record indicates that she has been diagnosed with both type I and type II diabetes mellitus. 

The examiner must provide a comprehensive report including complete rationales for all conclusions reached. 

5. Schedule the Veteran for an appropriate VA examination to evaluate the nature, extent and severity of her bilateral pes planus with metatarsalgia and bone spurs. 

The entire claims file (i.e. the paper claims file and any medical records contained in Virtual VA, CAPRI, and AMIE) must be reviewed by the examiner in conjunction with the examination. If the examiner does not have access to Virtual VA, any relevant treatment records contained in Virtual VA file that are not available on CAPRI or AMIE must be printed and associated with the paper claims file so they can be available to the examiner for review. Any indicated studies, to include upright images, must be performed. If upright images are not necessary, the examiner should discuss why. 

The examiner is to identify all residuals attributable to the Veteran's service-connected bilateral pes planus with metatarsalgia and bone spurs. 

The examiner must specifically discuss whether the Veteran's bilateral pes planus with metatarsalgia and bone spurs is moderate, moderately severe, or severe, as well as whether there is objective evidence of marked deformity (pronation, abduction, etc.), pain on manipulation and use accentuated, indication of swelling on use, and/or characteristic callosities. 

The examiner must provide a comprehensive report including complete rationales for all conclusions reached. 

6. Review the claims folder and ensure that all of the foregoing development actions have been conducted and completed in full. If any development is incomplete, appropriate corrective action is to be implemented.

7. Finally, readjudicate the claims. If any benefit sought on appeal is not granted, issue an updated supplemental statement of the case and give the Veteran and her representative an appropriate amount of time to respond to it. 

The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the U.S. Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2011).



_________________________________________________
M. E. LARKIN
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2002), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2011).