Citation Nr: 1331558 
Decision Date: 09/30/13 Archive Date: 10/02/13

DOCKET NO. 13-01 936 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in New Orleans, Louisiana


THE ISSUE

Entitlement to service connection for a psychiatric disorder, to include posttraumatic stress disorder (PTSD), a psychotic disorder, major depression, generalized anxiety disorder, agoraphobia with panic attacks, and stress related psychological response affecting a medical condition. 


REPRESENTATION

Appellant represented by: The American Legion


ATTORNEY FOR THE BOARD

D. Schechter, Counsel



INTRODUCTION

The Veteran served on active military duty from May 1954 to July 1957.

The appeal comes before the Board of Veterans' Appeals (Board) from an April 2010 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in New Orleans, Louisiana. 

The Board in May 2013 remanded the claim for additional development and recharacterized the claim as styled above, to reflect a broader claim for psychiatric disorder, pursuant to Clemons v. Shinseki, 23 Vet. App. 1 (2009). The claim now returns to the Board for further review. 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2013). 38 U.S.C.A. § 7107(a)(2) (West 2002).

The appeal is REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC. VA will notify the appellant if further action is required.


REMAND

In several statements and VA treatment records in recent years, the Veteran has provided narratives concerning an alleged stressor incident that occurred while the Veteran was stationed at a U.S. Air Force base in England. While the Veteran's accounts have varied in some instances, they generally concerned a fellow airman who shot and wounded or killed others at the barracks on base, shot a civilian on a bicycle, fled the area, and then committed suicide. Relying on that alleged stressor, VA treating clinicians have diagnosed PTSD related to service. 

The Board performed a brief internet search to reveal an incident which occurred at the U.S. Air Force Base at Manston, England, on August 24, 1955. The Board has associated a copy of the news story obtained with the claims file. Some of the details of the news story are similar to the narratives provided by the Veteran and it is possible that the Veteran experienced the events described in the news article by being stationed at the U.S. Air Force Based at Manston at the time. The Veteran's personnel records reflect that in August 1955 the Veteran was attached to the 406th Air Police Squadron at APO 198, USAF. 

The news article reflects that a U.S. soldier at the U.S. Air Force Base at Manston "ran amok with a .30 automatic carbine rifle and a .45 pistol," shot 10 people (killing three), hijacked a car, and escaped from the main gate prior to being pursued by military police, ultimately leading to that soldier being shot and killed (details as to the circumstances of his death vary). 

In light of this independently identified incident, the Board finds that remand is in order to develop the record, including confirming that the Veteran was present at the Manston Air Force Base at the time of the August 24, 1955, incident, and if so, obtaining a VA examination addressing whether the Veteran has PTSD to which this incident may be attributed as a stressor. 

In view of the remand and the Veteran's regular treatment through VA facilities, updated VA treatment records should be obtained.

Accordingly, the case is REMANDED for the following actions:

1. Obtain and associate with the claims file all as yet unobtained VA treatment records dated since October 2012.

2. Through appropriate official channels, attempt to verify that the Veteran was present at the U.S. Air Force Base at Manston, England, on or about August 24, 1955.

3. Official details concerning the mass shooting that occurred at the U.S. Air Force Base at Manston, England, on August 24, 1955, should be obtained from official sources. 

4. Thereafter, if the Veteran is confirmed to have been present at the U.S. Air Force Base in Manston, England, on August 24, 1955 (or when the mass shooting event occurred if different from that date), the Veteran should be afforded a VA psychiatric examination to address whether he has any psychiatric disorder related to service, including particularly PTSD related to that mass shooting event. This should be conducted by a licensed psychiatrist or psychologist. All clinical findings should be reported in detail. The claims file, and any digital claims file (to include records within Virtual VA) and a copy of this Remand must be made available to the examiner prior to the examination and must be reviewed by the examiner in connection with the examination. All necessary tests should be conducted, and findings and conclusions should be explained to the extent this may inform the adjudication of the Veteran's claim. The examiner should do the following: 

a. The examiner should review the claims file, including a copy of this Remand. The examiner should note that this examination is necessitated by the identification of a mass shooting event that occurred at the U.S. Air Force Base at Manston, England, in August 1955, while the Veteran was stationed at that base. The examiner should also note that the narratives provided by the Veteran concerning an alleged stressor incident, though also involving a mass shooting, vary to a degree in their details from the events that are verified to have occurred by official records. As part of the examination, the examiner should review the Veteran's past narratives and compare these with official records of the actual mass shooting that occurred. This should be done to assist the examiner in ascertaining whether the actual verified event is a stressor causative of current PTSD in the Veteran.

The examiner is advised that, to the extent deemed relevant and credible, lay statements may be used to support a diagnosis or an assessment of etiology as related to service. In this regard, if the examiner judges questions concerning the Veteran's credibility to be at issue, the examiner should explicitly note any such questions (if any are present), either as raised within the record or based on the Veteran's assertions upon examination, in combination with examination findings.

b. The examiner should then provide an evaluation of etiology of any and all current psychiatric disorders of the Veteran. For each psychiatric disorder diagnosed, the examiner should opine whether it is at least as likely as not (i.e., 50 percent or greater probability) that the disorder was first manifested in service, or is otherwise causally related to service, OR, in the alternative, whether any such relationship between service and the diagnosed psychiatric disorder is unlikely (i.e., less than 50 percent probability).

c. If the examiner diagnoses PTSD, the examiner must specify what stressors are relied upon to support that diagnosis under DSM IV, and which of these stressors, if any, occurred during the Veteran's period of active service from May 1954 to July 1957.

d. If the examiner diagnoses PTSD, the examiner must address whether that diagnosis is supported by any independently corroborated in-service stressors. This should specifically include consideration of the mass shooting incident in August 1955 at the U.S. Air Force Base at Manston, England. Also if the examiner diagnoses PTSD, the examiner should arrive at a conclusion as to whether, from a psychiatric perspective, it is at least as likely as not (i.e., 50 percent or greater probability) that asserted stressor or stressors were in fact experienced in service, and if so whether the Veteran experienced a valid stressor-type response to those asserted stressors contributing to current PTSD; OR, alternatively, whether the occurrence of any such stressor and a contribution thereby to PTSD is unlikely (i.e., less than 50 percent probability). 

The examiner should provide a complete explanation for his/her opinions. 

5. Finally, readjudicate the remanded claim. If any benefit sought on appeal is not granted to the Veteran's satisfaction, provide him and his representative with a supplemental statement of the case and afford an appropriate opportunity to respond thereto.

The appellant has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2013).



_________________________________________________
RYAN T. KESSEL
Acting Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2002), only a decision of the Board is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2013).