Citation Nr: 1132154 
Decision Date: 08/31/11 Archive Date: 09/07/11

DOCKET NO. 08-12 611 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Montgomery, Alabama


THE ISSUES

1. Entitlement to service connection for a throat condition.

2. Entitlement to service connection for a respiratory disorder, to include asthma.

3. Entitlement to service connection for arthritis, to include arthritis of the spine.

4. Entitlement to service connection for skin cancer.


REPRESENTATION

Appellant represented by: Alabama Department of Veterans Affairs


ATTORNEY FOR THE BOARD

Tresa M. Schlecht, Counsel 

INTRODUCTION

The Veteran had active military service from December 1948 until he retired in December 1968.

This appeal to the Board of Veterans' Appeals (Board) arises from a September 2006 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Montgomery, Alabama. The Board Remanded the appeal in July 2009. The Board notes that the claims on appeal are more accurately described as stated on the title page of this decision. See Clemons v. Shinseki, 23 Vet. App. 1 (2009) (description of a claim is not limited to the diagnosis identified by the Veteran).

In his April 2008 substantive appeal (VA Form 9), the Veteran requested a hearing at the RO before the Board, commonly referred to as a Travel Board hearing. However, he failed to report for the hearing, which had been scheduled for June 2009. As noted in the 2009 Remand, the Board considers his hearing request withdrawn. 38 C.F.R. § 20.704(d) (2010).

Please note this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2010). 38 U.S.C.A. § 7107(a)(2) (West 2002).

The appeal is REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC. VA will notify the appellant if further action is required.


REMAND

Claim for service connection for a "throat condition: In this case, the Veteran had not identified the nature of the "throat condition" for which he seeks service connection. Since service, the Veteran has apparently undergone laryngeal surgery. He has also undergone surgical treatment of thyroid cancer. He has additionally been treated surgically for a hiatal hernia. Each of these three disorders could reasonably be described by a lay person as a "throat condition." This listing of "throat conditions" is not a complete list of the disorders for which the Veteran has been treated during his lifetime that could be described as a disorder of the throat. The Veteran's only statement describing the "throat condition" for which he seeks service connection was a statement in 2006 indicating his belief that he had a "throat condition" due to his time on active duty, and that he considers his exposure to herbicides a "major factor" in the development of the claimed disorder. 

Unfortunately, until the Veteran describes the "throat condition" for which he seeks service connection with more specificity, the Board is unable to determine whether the clinical evidence has been adequately developed and whether each potential basis for service connection for the claimed "throat condition" has been adequately considered. The Veteran should be asked to clarify the nature of the "throat condition" for which he is seeking service connection, or whether he seeks service connection for any disorder which could be described as a throat condition. Then, after the Veteran provides clarification, any notice or development necessary to address the appropriate contention should be conducted.

Claim for service connection for asthma: The Veteran contends that he has asthma. See February 2006 claim. The claim was denied because the examiner who conducted VA examination in July 2010 determined that the Veteran's only respiratory disorder was chronic obstructive pulmonary disorder (COPD). 

However, private clinical records from JRK, MD, dated in August 2007, state that the Veteran developed "asthma" after he underwent coronary artery bypass grafts. This medical evidence suggests that the Veteran may have had asthma during a portion of the pendency of the appeal, even if he does not have it now. This evidence further suggests that what is now medically diagnosed as COPD may have been described to the Veteran as "asthma." The August 2007 private medical statement requires consideration of whether the Veteran has a respiratory disorder which is secondary to his service-connected ischemic heart disease, since the service-connected disability apparently encompasses the residuals of coronary artery bypass grafting. 

Claim for service connection for arthritis of the spine: The examiner who conducted July 2010 VA examination stated that the Veteran did not injure his "back," that is, the spine, during service. However, service treatment records disclose that the Veteran was treated for paravertebral muscle spasm in service. The Veteran was hospitalized for "strain, paravertebral muscle," in September 1961. The Veteran has described chronic, if intermittent, back pain, since that time. 

Because the examiner who conducted the VA examination did not discuss the medical evidence that the Veteran was treated in service for paravertebral strain, which a lay person could reasonable describe as a "back condition," the Board is unable to rely on the opinion expressed. Further development of the medical evidence is required. 

Claim for service connection for skin cancer: Finally, the examiner who conducted July 2010 VA examination stated that the Veteran has many risk factors for basal cell carcinoma other than his service. However, no summary of the Veteran's sun exposure in service was provided to the examiner, and no evidence regarding possible post-service sun exposure was obtained from the Veteran. The Board notes that the Veteran spent the vast majority of his 20 years of service at either Fort Rucker (Alabama), Fort Benning (Georgia), Fort Huachuca (Arizona), or in Vietnam. This information should be specified for the examiner or reviewer who provides the opinion requested below. The amount of sun exposure the Veteran had as an Aviation Crew Chief and as a Maintenance Supervisor should be specified for the examiner as well. The Veteran should be asked where he lived during the 20 years he served as a ROTC instructor following service, and should be asked to describe the extent of sun exposure during those duties. Medical opinion which addresses the additional information should be obtained. 

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2010). Expedited handling is requested.)

1. Ask the Veteran to clarify whether he is seeking service connection for a specific "throat condition," to clarify whether his claim for service connection for a "throat condition" is intended to address his 1972 laryngeal surgery, a thyroid disorder, a hiatal hernia, or some other disorder affecting the throat, or whether his claim is intended to include all of those disorders. 

2. After the Veteran provides clarification of the "throat condition" for which he seeks service connection, determine whether any additional notice or assistance is required. 

3. Ask the Veteran to provide information about his duties in service as an Aviation Crew Chief and as a Maintenance Supervisor, including a description of the amount of sun exposure. 

Ask the Veteran to provide additional information about the 20 years he spent post-service as an ROTC instructor, including where he lived and what his duties were. Ask him whether his employment included any reserve service or whether he was enlisted in a reserve component. 

Ask the Veteran to identify post-service employment other than as an ROTC instructor. 

Ask him to identify any facility at which he was treated post-service during his employment as an ROTC instructor, or prior to 2000, from which records might be available, and to identify any provider who treated him during that period from whom records might be available. 

4. Request any identified clinical records. Request reserve component records if such development is indicated. 

5. Ask the Veteran to identify records of private treatment of asthma. Obtain the records of the Veteran's cardiac bypass graft surgery and post-operative follow-up, after identification of the location and date of that surgery and date, and location of treatment of a respiratory disorder following that surgery and authorization for release of the records by the Veteran.

6. Obtain the Veteran's VA clinical records since July 2010, the date of last VA examination. 

7. After the above development directed in paragraphs #1-#5 has been completed to the extent possible, the Veteran should be afforded VA examination as necessary to obtain opinion(s) as to the onset and etiology of the disorder for which the Veteran seeks service connection as a "throat condition." The RO should summarize for the examiner the disorder or disorders for which the Veteran seeks service connection as a "throat condition." The examiner should assign a medical diagnosis for each "throat condition" at issue.

The claims folder and a copy of this Remand should be made available to the examiner(s) for review in connection with each examination. The examiner should obtain history from the Veteran and review the entire claims file, and should indicate, in each examination report, that such review was performed. Any tests or studies deemed necessary for an accurate assessment should be conducted, and the results should be associated with the claims file and discussed in the examination report. The examination report should include a detailed account of all pathology found to be present. 

AFTER the examiner assigns a medical diagnosis for each "throat condition" for which the Veteran seeks service connection, the examiner who conducts VA examination as to the claim for service connection for a "throat condition" should address the following:
 (a) Is it at least as likely as not (50 percent or greater probability) that the throat condition(s) had an onset during the Veteran's active service?
 (b) Is it at least as likely as not (50 percent or greater probability) that the throat condition(s) has/have been chronic and continuous since the Veteran's active service?
 (c) Is it at least as likely as not (50 percent or greater probability) that throat condition(s) is/are etiologically related to the Veteran's active service, or any incident thereof, to include exposure to herbicides? 
 In answering each question, the examiner must comment on the Veteran's lay statements as to onset of each "throat condition" and history of symptoms and treatment. 

The rationale for all opinions expressed should be provided in a legible report. If any requested opinion cannot be provided without resort to pure speculation, the examiner should so indicate. The examiner should state the reason why speculation would be required in this case (e.g., if the requested determination is beyond the scope of current medical knowledge, actual causation cannot be selected from multiple potential causes, etc.). If the examiner is unable to reach an opinion because there are insufficient facts or data within the claims file, the examiner should identify the information needed to provide the requested opinion. After development and an attempt to obtain the identified information, the claims file should be returned to the examiner for an updated opinion. 

8. After the above development directed in paragraphs #1-#5 has been completed to the extent possible, the Veteran should be afforded VA examination as necessary to obtain opinions as to the onset and etiology of a respiratory disorder, to include asthma, to include as secondary to service-connected ischemic heart disease with coronary artery bypass grafting. 

The claims folder and a copy of this Remand should be made available to the examiner(s) for review. The examiner should obtain history from the Veteran and review the entire claims file. Each examiner should indicate, in each examination report, that such review was performed. Any tests or studies deemed necessary for an accurate assessment should be conducted, and the results should be associated with the claims file and discussed in the examination report. The examination report should include a detailed account of all pathology found to be present. 

The examiner should address the following:
 (a) Is it at least as likely as not (50 percent or greater probability) that a respiratory disorder, to include asthma, had an onset during the Veteran's active service?
 (b) Is it at least as likely as not (50 percent or greater probability) that a respiratory disorder, to include asthma, has been chronic and continuous since the Veteran's active service?
 (c) Is it at least as likely as not (50 percent or greater probability) that a respiratory disorder, to include asthma, is etiologically related to the Veteran's active service, or any incident thereof, to include exposure to herbicides? 
 (d) The RO should provide the examiner with a list of each disability for which service connection has been granted. The examiner should state whether it is at least as likely as not (50 percent or greater probability) that a respiratory disorder, to include asthma, is etiologically related or secondary to any service-connected disability.
 In answering each question, the examiner must comment on the Veteran's lay statements as to onset of a respiratory disorder, to include asthma, and the history of symptoms and treatment. 
The rationale for all opinions expressed should be provided in a legible report. If any requested opinion cannot be provided without resort to pure speculation, the examiner should so indicate. The examiner should state the reason why speculation would be required in this case (e.g., if the requested determination is beyond the scope of current medical knowledge, actual causation cannot be selected from multiple potential causes, etc.). If the examiner is unable to reach an opinion because there are insufficient facts or data within the claims file, the examiner should identify the information needed to provide the requested opinion. After development and an attempt to obtain the identified information, the claims file should be returned to the examiner for an updated opinion. 

9. After the above development directed in paragraphs #1-#5 has been completed to the extent possible, the Veteran should be afforded VA examination as necessary to obtain opinion as to the onset and etiology of arthritis of the spine. The claims folder and a copy of this Remand should be made available to the examiner(s) for review. In particular, the examiner must review the service treatment records related to treatment and hospitalization for paravertebral strain. The examiner should obtain history from the Veteran and review the entire claims file. Each examiner should indicate, in each examination report, that such review was performed. Any tests or studies deemed necessary for an accurate assessment should be conducted, and the results should be associated with the claims file and discussed in the examination report. The examination report should include a detailed account of all pathology found to be present. 

The examiner should address the following:
 (a) Is it at least as likely as not (50 percent or greater probability) that the Veteran has a current back disorder, to include arthritis of the spine, had an onset during the Veteran's active service?
 (b) Is it at least as likely as not (50 percent or greater probability) that symptoms of a current back disorder, to include arthritis of the spine, have been chronic and continuous since the Veteran's active service?
 (c) Is it at least as likely as not (50 percent or greater probability) that a current back disorder, to include arthritis of the spine, is etiologically related to the Veteran's active service, or any incident thereof, to include paravertebral strain? 
 In answering each question, the examiner must comment on the Veteran's lay statements as to onset of back pain. 

The rationale for all opinions expressed should be provided in a legible report. If any requested opinion cannot be provided without resort to pure speculation, the examiner should so indicate, should state why speculation would be required in this case, and should identify the information needed to provide the requested opinion. After development and an attempt to obtain the identified information, the claims file should be returned to the examiner for an updated opinion. 

10. The VA examiner who conducts examination of the should ask the Veteran to summarize his sun exposure history in service, to include, but not limited to service induction date, the locations he was stationed at during service, the approximate number of months he was assigned to each location, and the extent to which his duties required sun exposure. 

The RO should also summarize any available information about the Veteran's post-service sun exposure.

11. After the above development directed in paragraphs #1-#5 and #10 has been completed to the extent possible, the Veteran should be afforded VA examination as necessary to obtain opinions as to the onset and etiology of basal cell carcinoma. 

The claims folder and a copy of this Remand, should be made available to the examiner(s) for review in connection with each examination. The examiner should obtain a complete sun exposure history from the Veteran as noted above, review the entire claims file, and should indicate that such review was performed. Any tests or studies deemed necessary for an accurate assessment should be conducted, and the results should be associated with the claims file and discussed in the examination report. The examination report should include a detailed account of all pathology found to be present. 

The examiner should address the following:
 Is it at least as likely as not (50 percent or greater probability) that the diagnosed basal cell carcinoma had its onset during or is a result of the Veteran's active service, or any incident thereof, to include exposure to herbicides or sun exposure?
 In answering each question, the examiner must comment on the Veteran's lay statements as to onset of basal cell carcinoma.

The rationale for all opinions expressed should be provided in a legible report. If any requested opinion cannot be provided without resort to pure speculation, the examiner should so indicate, should state why speculation would be required in this case, and should identify the information needed to provide the requested opinion. After development and an attempt to obtain the identified information, the claims file should be returned to the examiner for an updated opinion. 

12. After completing the above actions, and any other development as may be indicated by any response received as a consequence of the actions taken in the paragraphs above, readjudicate the claims on appeal. If any claim remains denied, a supplemental statement of the case must be provided to the Veteran and his representative. After the Veteran and his representative have had an adequate opportunity to respond, the appeal should be returned to the Board for appellate review, if appropriate.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2010).



_________________________________________________
MARJORIE A. AUER
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2002), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2010).