Citation Nr: AXXXXXXXX
Decision Date: 05/27/21 Archive Date: 05/27/21

DOCKET NO. 200609-90672
DATE: May 27, 2021

REMANDED

Entitlement to service connection for posttraumatic stress disorder (PTSD) is remanded.

Entitlement to service connection for a liver condition, to include as secondary to PTSD, is remanded.

Entitlement to service connection for a left knee disability is remanded.

Entitlement to service connection for a right knee disability is remanded.

Entitlement to service connection for a traumatic brain injury (TBI) is remanded.

REASONS FOR REMAND

The Veteran had active duty service in the United States Army from October 2009 to October 2010, with additional service in the Army National Guard and Army Reserves.

The rating decision on appeal was issued in May 2020. In his June 2020 VA Form 10182 (Decision Review Request: Board Appeal), the Veteran elected the Direct Review option for this appeal; therefore, the Board may therefore consider only the evidence in the record at the time of the May 2020 agency of original jurisdiction (AOJ) decision. See 38 C.F.R. § 20.301.

As an initial matter, the Board notes the Veteran filed a claim for service connection for PTSD, and since has been diagnosed with anxiety. As the Veteran is not expected to possess the medical knowledge to describe the universe of his claim and the record indicates the possibility that other psychiatric disorders are present, the Board has recharacterized his claim as one of service connection for an acquired psychiatric disorder, to include PTSD and/or anxiety. See Clemons v. Shinseki, 23 Vet. App. 1, 5 (2009).

1. Entitlement to service connection for an acquired psychiatric disorder, to include PTSD and/or anxiety, is remanded.

In March 2019, the Veteran reported encountering improvised explosive devices while deployed on active duty in Afghanistan and witnessing casualties and injuries to others. On a September 2010 post-deployment health assessment, the Veteran answered yes when asked whether he had encountered dead bodies or seen people killed or wounded during this deployment; he also answered yes when asked whether he ever felt he was in great danger of being killed during this deployment. The rating decision on appeal made a favorable finding, noting that the stressor or in-service event is conceded based on service in Afghanistan with a fear of possible military and/or terrorist and blast or explosion exposures. The Board also notes the favorable finding of a diagnosis of anxiety.

The AOJ denied service connection for PTSD based on the July 2019 VA examination, where the examiner found the Veteran did not meet the criteria for a diagnosis of PTSD as the reported stressor events were not sufficient to meet the DSM criteria. However, the reported stressor events upon which the examiner relied did not reflect the conceded stressor noted above; rather, the examiner only considered the Veteran's reports of tracking stolen military property and having people throw rocks at him while deployed. Likewise, the examiner did not address the service treatment record documenting treatment for a panic attack and anxiety in opining that the Veteran's medical records did not demonstrate a relationship between his deployment to Afghanistan and his current anxiety.

As the examiner did not consider the conceded stressor event in opining whether the Veteran met the criteria for a diagnosis of PTSD and in whether the current anxiety diagnosis is related to his active duty service, this examination is inadequate. See Barr v. Nicholson, 21 Vet. App. 303, 311 (2007) (once VA undertakes to provide an examination, it must provide an adequate one). In relying on this examination to deny service connection for an acquired psychiatric disorder, the AOJ committed a duty-to-assist error, and a remand is necessary to obtain an adequate examination.

2. Entitlement to service connection for a liver condition, to include as secondary to PTSD, is remanded.

The Veteran has asserted that he engaged in alcohol use to cope with anxiety, which subsequently led to his liver condition, although the record indicates there may be other liver conditions present as well. The Veteran's VA treatment records clearly reflect that he initially presented to a private hospital for treatment of his liver symptoms, and was discharged with diagnoses of cirrhosis, jaundice, and Budd-Chiari syndrome; a January 2019 VA treatment note also contains a report of a diagnosis of hemochromatosis. The private treatment records therefore are relevant to determining the nature of the claimed disability and its likely etiology. The AOJ committed a duty-to-assist error in failing to solicit authorization to obtain these records on the Veteran's behalf, and a remand is necessary to do so.

3. Entitlement to service connection for a left knee disability is remanded.

4. Entitlement to service connection for a right knee disability is remanded.

The AOJ denied service connection for left and right knee disabilities based largely on the Veteran's failure to attend a VA knee examination to obtain nexus opinion. However, the record reflects the AOJ requested this knee examination but does not reflect the VA contractor ever scheduled it or, if it was scheduled, ever notified the Veteran of the appointment. As the AOJ failed to document that the Veteran was notified of the examination, the Board finds a duty-to-assist error was made, and a remand is necessary to schedule a new VA knee examination appointment.

5. Entitlement to service connection for a TBI is remanded.

The AOJ denied service connection for a TBI based on the fact that there is no confirmed clinical diagnosis of a TBI. Although the AOJ noted the Veteran's denial of experiencing a head injury or loss of consciousness on the September 2010 post-deployment health assessment, it also noted a positive TBI screen in the Veteran's VA treatment records. The Board also notes the Veteran reported suffering a head injury during a May 2010 roll-over accident at the July 2019 VA psychiatric examination, and endorsed being exposed to IED blasts on the September 2010 post-deployment health assessment. 

Given the positive TBI screening in the VA treatment records and the Veteran's reports of potentially concussive events during service, the Board finds a duty-to-assist error was committed in not obtaining a VA TBI examination, particularly as the AOJ relied on the absence of a confirmed diagnosis of TBI in denying this claim. Therefore, a remand is necessary to obtain an examination.

The matters are REMANDED for the following action:

1. Ask the Veteran to identify any private treatment that he may have had for his liver conditions that is not already of record, including any records from the private hospital where he first presented for treatment of the liver symptoms. After securing the necessary releases, attempt to obtain and associate those identified treatment records with the claims file. If any identified records cannot be obtained and further attempts would be futile, such should be noted in the claims file and the Veteran should be notified so that he can make an attempt to obtain those records on his own behalf.

2. Forward the claims file to an appropriate clinician to determine whether any current psychiatric disorder is related to the Veteran's military service. If the examiner determines that an additional in-person examination is required, one should be scheduled. Please note, if the examiner deems it reasonable, an alternate format such as telehealth interview is acceptable.

The examiner is advised that the Veteran's in-service stressors of encountering improvised explosive devices, witnessing casualties, and fearing for his life have been conceded.

Following review of the claims file and, if indicated, examination of the Veteran, the examiner should identify all current acquired psychiatric disabilities. For each identified psychiatric disability, the examiner should opine whether it is at least as likely as not (50 percent or greater probability) that the psychiatric disorder began in or is otherwise caused by the Veteran's active service.

The examiner should specifically address the Veteran's January 2010 service treatment record showing treatment for anxiety and panic attacks, and his lay statements regarding ongoing symptoms since service. The examiner may not dismiss the Veteran's report of symptoms capable of lay observation solely because they are not recorded in contemporaneous treatment records. The examiner should address any other pertinent evidence of record.

All findings must be reported in detail and all opinions must be accompanied by a clear rationale. If any of the above issues cannot be resolved without resorting to speculation, then a detailed medical explanation as to why this is so must be provided.

3. Schedule the Veteran for an examination with an appropriate clinician to determine whether any current left and/or right knee disability is related to the Veteran's military service. The claims file must include documentation of the notice provided to the Veteran regarding the date, time and place of the examination. The claims file must be made available to and be reviewed by the examiner in conjunction with the examination. 

Following review of the claims file and examination of the Veteran, the examiner should identify all left and/or right knee disabilities currently found. 

For EACH knee disability identified, the examiner should opine whether it is at least as likely as not (50 percent or greater probability) that the disability began in or is otherwise caused by the Veteran's active service.

The examiner should address the Veteran's lay statements regarding onset and continuity of symptoms. The examiner may not dismiss the Veteran's report of symptoms capable of lay observation solely on the basis that they are not recorded in contemporaneous treatment records. The examiner should address any other pertinent evidence of record, including the Veteran's October 2009 service treatment record indicating an initial right knee injury during a ruck march in July 2008 and complaints of knee pain since that time.

All findings must be reported in detail and all opinions must be accompanied by a clear rationale. If any of the above issues cannot be resolved without resorting to speculation, then a detailed medical explanation as to why this is so must be provided.

4. Schedule the Veteran for an examination with an appropriate clinician to determine whether the Veteran experienced a traumatic brain injury (TBI) during his active duty military service from October 2009 to October 2010. The claims file must be made available to and be reviewed by the examiner in conjunction with the examination. 

Following review of the claims file and examination of the Veteran, the examiner should identify whether it is at least as likely as not (50 percent or greater probability) that the Veteran experienced a TBI during active duty service. 

If a TBI is identified, the examiner should opine whether the Veteran experiences any current residuals of the TBI. If a TBI is not identified, the examiner should opine whether it is at least as likely as not (50 percent or greater probability) that the Veteran experienced a concussion during active duty service, and whether there are any current symptoms of a post-concussive syndrome.

(Continued on the next page)

 

The examiner should address the Veteran's lay statements regarding potentially concussive events during service. The examiner should address any other pertinent evidence of record.

All findings must be reported in detail and all opinions must be accompanied by a clear rationale. If any of the above issues cannot be resolved without resorting to speculation, then a detailed medical explanation as to why this is so must be provided.

 

 

M. HYLAND

Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board K. Josey, Counsel

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.