Citation Nr: 1305224 
Decision Date: 02/13/13 Archive Date: 02/21/13

DOCKET NO. 10-14 466 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Oakland, California


THE ISSUE

Entitlement to service connection for an acquired psychiatric disorder, to include posttraumatic stress disorder (PTSD).


REPRESENTATION

Appellant represented by: California Department of Veterans Affairs


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

P. Childers, Counsel

INTRODUCTION

The Veteran served on active duty from July 1978 until his retirement in July 1998. Although he served during the Persian Gulf War era, he is not a Persian Gulf War Veteran.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a November 2007 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Oakland, California.

In May 2012, the Veteran testified before the undersigned Veterans Law Judge at a Travel Board hearing in Oakland, California. A transcript of that hearing is in the claims file.

Although the Veteran filed his claim as one for service connection for PTSD, as there is evidence in this case of multiple psychiatric disorders, the Board has restyled the issue as reflected on the title page of this decision. See Clemons v. Shinseki, 23 Vet. App. 1 (2009) (providing that a claimant without medical expertise cannot be expected to precisely delineate the diagnosis of his illness; he filed a claim for the affliction that his mental condition, whatever it is, causes him). 

The appeal is REMANDED to the RO via the Appeals Management Center (AMC), in Washington, D.C. VA will notify the appellant if further action is required.


REMAND

In support of his claim of service connection for PTSD, the Veteran's treating VA social worker has reported that the Veteran receives regular treatment at the Eureka, California, Community Based Outpatient Clinic (CBOC). Records of the Veteran's care at this facility, however, dated since February 2010, are not physically or electronically. Because these records are pertinent to the appeal and are constructively before VA the Board has no discretion and must remand this claim for further development.

In October 2006 the Veteran filed a claim for service connection for PTSD. In support of his claim he reports that he was stationed at the Berlin wall during the 1980s, and at the time of the collapse wall, and that he saw, firsthand, the death and maiming of multiple individuals by enemy soldiers. He specifically recalled the slaying by East German border guards of a young female as she tried to flee over the wall, and gave the approximate date of this incident. He also reports being on the scene when a young infantryman was accidentally electrocuted during a game of Frisbee on Fort Hood; happening upon, and accidentally touching, the remains of a motor pool comrade who had committed suicide in Bad Kissengen; being on the scene when another comrade was accidentally crushed to death while working in the motor pool at Bad Kissengen; witnessing, and coming to the aid of, an infantryman who was accidentally electrocuted at Bremahaven while en route to the Persian Gulf; and, while in air assault school at Fort Campbell, Kentucky, being in the back of a ch-47 when it lost power and plunged 45 feet to a hard landing. He adds that he was frequently confronted by armed and poised East German Border Guards (with weapons raised) while he was stationed in Berlin.

VA treatment records dating from January to April 2005 show a diagnosis of depression. 

In May 2005 the Veteran was examined by a VA staff psychiatrist. The physician noted that the Veteran's PTSD screen was positive, and that the Veteran had a 4 to 5 year history of anxiety and depressive spectrum symptoms in the context of multiple severe stressors, with life altering consequences, including chronically negative ruminations, sleep disturbance, possible appetite disturbance, and increasing problems controlling anger. According to this physician, the Veteran's symptoms did not meet "full criteria" for a diagnosis of major depression. He also stated that the Veteran's symptoms did not appear to meet the criteria for a diagnosis of PTSD. Diagnosis was Dysthymia.

In June 2005 the Veteran was reexamined by the same VA staff psychiatrist. On PTSD screen the Veteran admitted to occasional nightmares and intrusive thoughts of his experiences at the Berlin Wall; however, the physician concluded that the Veteran did not meet the criteria for a diagnosis of PTSD because he did not exhibit sufficient avoidant symptoms. Diagnosis was dysthymia, with "some posttraumatic symptoms not sufficient to meet criteria for diagnosis." The physician added that these symptom likely contributed to the Veteran's irritability.

In July 2010 the regulations pertaining to service connection for PTSD were amended to provide for service connection if a stressor claimed by a veteran was related to the veteran's "fear of hostile military or terrorist activity" and a VA or VA-contracted psychiatrist or psychologist confirmed that the claimed stressor was adequate to support a diagnosis of PTSD. See Stressor Determinations for Posttraumatic Stress Disorder, 75 Fed. Reg. 39,843, 39,852 (July 13, 2010) (codified at 38 C.F.R. § 3.304(f)(3)). The Veteran has not been apprised of this new provision. 38 C.F.R. § 19.29. This is significant in this case since VA treatment records dating from August 2006 show that the Veteran is presently being treated by a VA nurse, and by a VA social worker, for PTSD and dysthymia. 

On the other hand, while the Veteran is being treated by mental health providers for PTSD and dysthymia (ostensibly related to certain events in Germany), he does not have a verified in-service stressor, so the evidence is insufficient to establish service connection under 38 C.F.R. § 3.303 or 38 C.F.R. § 3.304(f). The evidence is, however, sufficient to require further development of the Veteran's claim of service connection for an acquired psychiatric disorder. See McLendon v. Nicholson, 20 Vet. App. 79 (2006) (providing that the Secretary must provide a VA medical examination when there is (1) competent evidence of a current disability or persistent or recurrent symptoms of a disability, (2) evidence establishing that an event, injury, or disease occurred in service, or establishing certain diseases manifesting during an applicable presumptive period for which the claimant qualifies, and (3) an indication that the disability or persistent or recurrent symptoms of a disability may be associated with the Veteran's service or with another service-connected disability, but (4) there is insufficient competent medical evidence on file for the Secretary to make a decision on the claim. 

In order to determine whether an acquired psychiatric disorder actually manifest during service or is related to some incident of service, efforts should be undertaken to verify the Veteran's reported stressor events. See M21-1MR, Part IV, Subpart ii, Chapter 1, Section D. On remand the Veteran must be provided a copy of the latest version of 38 C.F.R. § 3.304(f) and notified that he should submit any evidence in support of his claim that pertains to "fear of hostile military or terrorist activity." 38 C.F.R. § 19.29. The claims file should also be updated to include any additional treatment records dated after February 2010. Then, and in accordance with McLendon, the Veteran should then be accorded a VA examination. 38 C.F.R. § 3.159(c)(4).

Accordingly, the case is REMANDED for the following action:

1. Provide the Veteran with a copy of 38 C.F.R. § 3.304(f)(3)) (effective July 13, 2010), and notify him that he should submit any evidence in support of his claim for PTSD relating to "fear of hostile military or terrorist activity." 38 C.F.R. § 19.29. 

2. Notify the Veteran that he may submit lay statements from himself and from other individuals who have first-hand knowledge, and/or were contemporaneously informed of the Veteran's reported in-service stressors and the onset and continuity of any psychiatric symptoms during and since service. The Veteran should be provided an appropriate amount of time to submit this lay evidence.

3. Attempt to corroborate the specific stressor events described by the Veteran in his stressor statements and during his May 2012 Board hearing; including, but not limited to, the following: 

o the slaying by East German border guards of a young female as she tried to flee over the Berlin wall in late September 1980, at check point 141.. 
o the accidental electrocution of a young infantryman during a game of Frisbee near the barracks on Fort Hood in early September, 1979 (on a platform with electrical transformers);
o the suicide of a motor pool guard attached to the E Troop 2/11 Armored Calvary Regiment in Bad Kissengen, West Germany; 
o the death of a young private working in the motor pool at Bad Kissengen, who was crushed in the back by a falling section of m88 track; 
o the death of a Persian Gulf bound infantryman who was accidentally electrocuted by a power line as he climbed up on an IFU at Bremahaven; sometime between January 1990 and August 1991; 
o the crash of a ch-47 that lost power and plunged 45 feet to a hard landing in air assault school at Fort Campbell, Kentucky, in November 1979. 

In attempting to verify these events, a request for unit histories and Morning Reports should be made.

4. Associate, with the claims file, the Veteran's VA medical records (including virtual/electronic records) dating from April 2008, from the Eureka Community Based Outpatient Clinic. If no records are found, notify the Veteran and his representative in accordance with 38 C.F.R. § 3.159(e).

5. Then, make a formal finding regarding the in-service stressor event(s) reported by the Veteran. See M21-1 MR, Part IV, Subpart ii, Chapter 1, Section D, Paragraph 13(d) and 38 C.F.R. § 3.304(f)(1).

6. Thereafter, schedule the Veteran for an examination with a VA psychiatrist or psychologist, or a psychiatrist or psychologist with whom VA has contracted to determine the nature of any psychiatric disorder the Veteran may have, to include PTSD. See 38 C.F.R. § 3.304(f)(3). 

The claims file and a copy of this Remand must be made available to, and reviewed by, the examiner in conjunction with the examination. All pertinent symptomatology and findings must be reported in detail. The examiner must record all pertinent medical complaints, symptoms, and clinical findings, and must review the results of any testing prior to completion of the report.

Following a review of the claims file, to include service and post-service medical records, the May 2012 Board hearing Transcript, and the psychiatric examination results, the examiner is requested to determine whether the Veteran has a psychiatric disability that is related to or had its onset in service. A diagnosis of PTSD must be ruled in or excluded. 

In offering this assessment the examiner must discuss each of the psychiatric disabilities that were diagnosed during the appeal, e.g., dysthymia, depressive disorder and PTSD, and opine as to each diagnosis as to whether it is at least as likely as not related to or had its onset in service.

In offering these opinions, the examiner must acknowledge and discuss the Veteran's competent report as to the onset of his psychiatric symptoms.

A complete rationale for all opinions must be provided. 

6. After completing the above development, and any other development deemed necessary, readjudicate the appeal. In doing so, the RO must consider the applicability of revised regulation 38 C.F.R. § 3.304(f)(3) (2012). If the benefit sought remains denied, provide an additional supplemental statement of the case to the Veteran and his representative, and return the appeal to the Board for appellate review, after the Veteran has had an adequate opportunity to respond.

The appellant has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2012).



_________________________________________________
STEVEN D. REISS
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2002), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2012).