Citation Nr: 1340180 
Decision Date: 12/05/13 Archive Date: 12/20/13

DOCKET NO. 12-13 299 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Muskogee, Oklahoma



THE ISSUE

Entitlement to service connection for an acquired psychiatric disorder, to include posttraumatic stress disorder (PTSD).



REPRESENTATION

Appellant represented by: Disabled American Veterans



WITNESS AT HEARING ON APPEAL

The Veteran



ATTORNEY FOR THE BOARD

M. Postek, Associate Counsel


INTRODUCTION

The Veteran served on active duty from July 1958 to September 1962.
 
This case comes before the Board of Veterans' Appeals (Board) on appeal from an August 2011 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Muskogee, Oklahoma.

A Board hearing was held before the undersigned Veterans Law Judge at the RO in April 2013. A transcript of the hearing is of record. As a result of the pre-hearing discussion noted on the record, the issue on appeal has been recharacterized as stated above to more accurately reflect the nature of the claim. Clemons v. Shinseki, 23 Vet. App. 1 (2009). In addition, the Veteran submitted two written statements immediately prior to the hearing, along with a written waiver of the RO's initial consideration. The Veterans Law Judge also held the record open for a 30-day period following the hearing to allow for the submission of evidence. Thereafter, the Veteran submitted additional evidence along with a written waiver of the RO's initial consideration.

A review of the Virtual VA and VBMS electronic claims files does not reveal any additional documents pertinent to the present appeal with the exception of the Board hearing transcript.

The appeal is REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC. VA will notify the appellant if further action is required.




REMAND

The Board finds that further development is necessary prior to final adjudication of the Veteran's claim. In particular, the Board notes that the Veteran has not been afforded a VA examination in connection with his current claim.

The Veteran contends that his current mental health symptoms are a result of the jarring, unexpected incidents he witnessed during the course of his duties as a laboratory and blood bank technician at the U.S. Naval Hospital in Pensacola. Specifically, the Veteran has asserted that his duties included assisting in the hospital morgue, where he observed a decapitated sailor in a vault, a severely burned corpse, corpses with missing extremities, and the body of a flight surgeon the Veteran had performed bloodwork on about a week prior to his death. See, e.g., November 2010 claim; Bd. Hrg. Tr. at 3, 5-12, 25-26, 29; February 2011 and April 2013 supporting lay statements.

The Veteran's service treatment records show that he was found psychiatrically abnormal during the June 1958 entrance examination with related notations of mild stuttering/stammering under stress NCD (not considered disqualifying). Otherwise, there were no documented in-service psychiatric complaints, treatment, or diagnoses. During the August 1962 separation examination, there were no psychiatric abnormalities noted. 

The Veteran's service personnel records and training certificate confirm that he received on-the-job training as a hospital corpsman and served at the Naval Hospital from mid-1960 to 1962 as reported. However, in a July 2011 formal finding memorandum, the RO indicated that it could not verify the reported stressors and any further attempts to do so would be futile.

During the April 2013 Board hearing, the Veteran clarified that he did not receive VA mental health treatment; however, medical records from his private provider show current diagnoses of PTSD and agoraphobia without panic disorder and note consideration of the Veteran's reported work in the morgue in association with these diagnoses. See, e.g., January 2011 private treatment record.
In light of the above, there is evidence that the Veteran's current symptomatology may be related to his military service, but insufficient medical evidence to make a decision on the claim, thereby satisfying the low threshold for obtaining an examination and resulting opinion as part of VA's duty to assist, as articulated in McLendon v. Nicholson, 20 Vet. App. 79 (2006).

Accordingly, the case is REMANDED for the following action:

1. The Veteran should be afforded a VA examination to determine the nature and etiology of any current psychiatric disorder. Any studies, tests, and evaluations deemed necessary by the examiner should be performed, but should include psychological testing, including PTSD sub scales. The examiner is requested to review all pertinent records associated with the claims file, including the Veteran's service treatment records, post-service medical records, and statements.

The Veteran contends that he developed an acquired psychiatric disorder, to include PTSD, as a result of his in-service duties requiring him to assist the hospital morgue staff. Specifically, he has reported that he observed jarring, unexpected incidents, to include a decapitated sailor in a vault, a severely burned corpse, corpses with missing extremities, and the body of a flight surgeon he had performed bloodwork on about a week prior to his death.

It should be noted that the Veteran is competent to attest to factual matters of which he had first-hand knowledge, including observable symptomatology. If there is a medical basis to support or doubt the history provided by the Veteran, the examiner should provide a fully reasoned explanation.
The examiner should identify all current psychiatric disorders. The examiner should also state if he or she can determine what, if any, diagnosis of a psychiatric disorder existed prior to service. In so doing, the examiner should review the Veteran's June 1958 entrance examination report noting a psychiatric abnormality with related notations of stuttering/stammering under stress, NCD.

If the examiner determines that a psychiatric disorder preexisted service, he or she should state whether there was an increase in the severity during service. If the evidence reflects such an increase, the examiner should indicate whether any increase was due to the natural progression of the disorder or whether it represented a chronic worsening of the underlying pathology.

For any current psychiatric disorder identified other than PTSD that did not preexist service, the examiner should state whether it is at least as likely as not (a 50 percent or greater probability) that the disorder manifested in or is otherwise related to the Veteran's military service, including the alleged incidents therein.

(The term "at least as likely as not" does not mean within the realm of medical possibility, but rather that the medical evidence both for and against a certain conclusion is so evenly divided that it is as medically sound to find in favor of such a conclusion as it is to find against it.)

With respect to PTSD, the RO/AMC should provide the examiner with a summary of any verified in-service stressors, if any, and the examiner must be instructed that only these events may be considered for the purpose of determining whether exposure to an in-service stressor has resulted in PTSD. The examiner should determine whether the diagnostic criteria to support the diagnosis of PTSD have been satisfied. If the PTSD diagnosis is deemed appropriate, the examiner should then comment upon the link between the current symptomatology and any verified in-service stressor.

A clear rationale for all opinions would be helpful and a discussion of the facts and medical principles involved would be of considerable assistance to the Board. Because it is important "that each disability be viewed in relation to its history [,]" 38 C.F.R. § 4.1), copies of all pertinent records in the Veteran's claims file, or in the alternative, the claims file, must be made available for review.

2. After completing the above action and any other development as may be indicated as a consequence of the action taken in the preceding paragraph, the case should be reviewed by the RO/AMC on the basis of additional evidence. If the benefit sought is not granted, the Veteran and his representative should be furnished a supplemental statement of the case and be afforded a reasonable opportunity to respond before the record is returned to the Board for further review.

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2013).



_________________________________________________
J.W. ZISSIMOS
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2002), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2013).