Citation Nr: 1607907 
Decision Date: 02/29/16 Archive Date: 03/04/16

DOCKET NO. 09-15 919 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO) in 
Nashville, Tennessee


THE ISSUES

1. Entitlement to service connection for residuals of head trauma, to include headaches and memory loss.

2. Entitlement to service connection for an acquired psychiatric disability, to include post-traumatic stress disorder (PTSD) and depression and anxiety.


REPRESENTATION

Appellant represented by: The American Legion


ATTORNEY FOR THE BOARD

Mary C. Suffoletta, Counsel 


INTRODUCTION

The Veteran served on active duty from August 1974 to August 1976.

These matters initially came to the Board of Veterans' Appeals (Board) on appeal from a July 2005 rating decision that, in pertinent part, denied service connection for residuals of head trauma, to include headaches and memory loss; and denied service connection for PTSD, for depression, and for anxiety. The Veteran timely appealed.

In June 2009, the Veteran withdrew his prior request for a hearing before RO personnel, in writing.

In May 2013, the Board remanded the matters for additional development. As noted in the prior remand, the U.S. Court of Appeals for Veterans Claims has held that the Board must broadly construe claims, and consider other diagnoses for service connection when the medical record so reflects. Clemons v. Shinseki, 23 Vet. App. 1 (2009). Accordingly, because the Veteran claimed service connection for various disabilities which involved overlapping symptomatology, the issues on appeal were recharacterized by the Board as shown on the title page.

In January 2014, VA's Appeals Management Center (AMC) granted service connection for a sleep disorder, and assigned an initial zero percent (noncompensable) evaluation, effective November 12, 2004. As the AMC's grant of service connection has resolved that matter, it is no longer before the Board.

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the Veteran and his representative when further action is required.



REMAND

Records

In December 2004, the Veteran reported that he was "trying to get help" through the Social Security Administration (SSA). The medical evidence that is used by SSA to award disability benefits and any recent evaluations should be obtained. The Court has held that when VA is put on notice of the existence of relevant SSA records, VA must seek to obtain those records before proceeding with the appeal. Lind v. Principi, 3 Vet. App. 493, 494 (1992). 

In addition, recent VA treatment records should be obtained. See Bell v. Derwinski, 2 Vet. App. 611 (1992) (VA has constructive notice of VA generated documents that could reasonably be expected to be part of the record).

Residuals of Head Trauma 

The Veteran contends that service connection for residuals of head trauma, to include headaches and memory loss, is warranted on the basis that he fell off of an Army truck and hit his head during active service in Germany. In August 2005, the Veteran reported having chronic headaches since 1975. He is competent to describe his symptoms.

Service treatment records reflect that the Veteran fell out of a 21/2 ton truck in February 1975, and that he was brought to the dispensary for observation. At the time the Veteran was awake, alert, and oriented; he responded, however, in a somewhat sluggish manner. Examination revealed a small, superficial abrasion on the occiput; no sutures were needed. Neurological examination was within normal limits. The impression was head trauma.

VA records show treatment for headaches in July 2005. With regard to headaches, the Veteran is competent to identify a medical condition. The Board notes that the Veteran also complained of memory problems.

In October 2013, a VA examiner opined that the Veteran did not have a diagnosed traumatic brain injury. In support of the opinion, the examiner reasoned that the Veteran did not report any loss of consciousness or other behavioral sequelae. No mention was made of the Veteran's headache condition or complaints of memory problems. 

The Veteran was scheduled for a TBI examination in October 2013 and the supplemental statement of the case indicates that the Veteran did not report for the examination. However, the record does not include a copy of any letter that was sent to the Veteran informing him of the date, time and location of the examination. Under these circumstances, the Board cannot find that the Veteran was properly notified and another examination should be scheduled to determine whether the Veteran has current residuals of head trauma, to include headaches and memory loss, that either had their onset during service or are related to his active service. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c)(4) (2015). 

Acquired Psychiatric Disability
 
The Veteran attributes his alleged PTSD to an incident that occurred during a training exercise in active service in Germany, where he witnessed charred and burned bodies when his roommate electrocuted and severely shocked several troops while operating a crane. Following the incident, the Veteran reportedly did not sleep well and became anxious and depressed; he reported being helpless when the incident occurred, and reported that he later testified in court martial of the crane operator. The Veteran self-medicated with drugs and alcohol to "cover up all the emotions." A Form DD 214 also reflects the Veteran's military occupational specialty as a crane operator. This incident and the death of fellow troops reportedly had a big impact on the Veteran's life.

There is credible supporting evidence that the claimed in-service stressor reported by the Veteran actually occurred. See 38 C.F.R. § 3.304(f). The Veteran's personnel records place him at the date, time, and location of an electrocution incident of two soldiers at Darmstadt in Germany in March 1975. To this extent, the Board concludes that the Veteran was exposed to an event in service that may have led to a current psychiatric disability.

VA treatment records, dated in December 2004, reveal that the Veteran did not then meet criteria for PTSD because he did not exhibit "Criteria C" symptoms of avoidance and numbing; and suggested that the Veteran's past numbing-like symptoms were likely a manifestation of substance dependence. The VA psychologist noted that the Veteran likely experienced an acute exacerbation of "Criteria B" symptoms of intrusive thoughts. Axis I diagnoses were major depression; and cocaine and alcohol dependence, in early full remission.
 
During a March 2005 VA examination, the Veteran reported having nightmares and intrusive thoughts on occasion about the in-service stressor; he reportedly slept three hours at night without medications. Following examination, the Axis I diagnoses were depressive disorder, not otherwise specified; polysubstance abuse, early remission; and substance-induced mood disorder, mild. The examiner opined that the Veteran's depression was 75 percent situational and 25 percent substance-induced.

VA treatment records, dated in February 2009, reveal that the Veteran had been depressed for many years, which became worse after Katrina and after leaving New Orleans. He reportedly had been homeless, and was living with a friend; and reportedly used alcohol to ease the symptoms of depression.
 
Examination of the Veteran in October 2013 revealed no persistent avoidance of stimuli associated with the trauma, or numbing of general responsiveness; full criteria for PTSD were not met. The Veteran did report having nightmares about the in-service stressor. The examiner noted that the Veteran continued to report depressive-type symptoms, which were attributed to a number of factors-e.g., poor financial situation, inability to get insurance, worries about medical conditions, regrets over past substance abuse, not doing more with his life, and the care of a family member.

In a January 2014 addendum, the October 2013 examiner opined that the Veteran did not meet the DSM-IV criteria for a diagnosis of PTSD; and that he was given a diagnosis of dysthymia. The examiner opined that it appeared less likely than not that depression was primarily related to military events. In this regard, further medical clarification is required to resolve the matter on appeal. 

Here, there is evidence of longstanding symptomatology of depression and PTSD was diagnosed at VA in December 2012. On remand, the Veteran should undergo another VA psychiatric examination to address the etiology of any psychiatric disability found to be present; and to determine whether any psychiatric disability either had its onset during active service or is related to the verified in-service stressor or other incident of service.

While further delay of this case is regrettable, due process considerations require such action. Accordingly, the case is REMANDED for the following action:

1. Review the claims folder and ensure that all notification and development action required by the VCAA are fully complied with and satisfied. Specifically, the RO or AMC should notify the Veteran of the information and evidence necessary to establish service connection on a secondary basis. 

2. Undertake appropriate action to obtain copies, from the Social Security Administration, of any determination on the Veteran's claim for disability benefits (to include any readjudications) and the medical records (other than VA treatment records) used as a basis of the award, and any recent evaluations.

All attempts to fulfill this development should be documented in the claims file. If after continued efforts to obtain the records it is concluded that it is reasonably certain they do not exist or further efforts to obtain them would be futile, the AMC must notify the Veteran and (a) identify the specific records the AMC is unable to obtain; (b) briefly explain the efforts that the AMC made to obtain those records; (c) describe any further action to be taken by the AMC with respect to the claims; and (d) inform the Veteran that he is ultimately responsible for providing the evidence. The Veteran must then be given an opportunity to respond.

3. Obtain the Veteran's outstanding VA treatment records, from February 2015 forward; and associate them with the Veteran's claims file.

4. Afford the Veteran a VA examination to identify all current disability underlying the Veteran's current complaint of residuals of head trauma, to include headaches and memory loss; and the likely etiology of each disease or injury. 

For any current disability associated with residuals of head trauma identified, the examiner is requested to determine whether it is at least as likely as not (50 percent probability or more) that it is the result of disease or injury incurred during active service-specifically, to include the confirmed diagnosed head trauma from falling off of a truck in February 1975, as reported by the Veteran and noted in service treatment records, and the Veteran's competent account of continuing headaches and memory loss since then. 

The examiner is asked to explain the reasons behind any opinions offered. The examiner is also reminded that the term "as likely as not" does not mean "within the realm of medical possibility," but rather that the evidence of record is so evenly divided that, in the examiner's expert opinion, it is as medically sound to find in favor of the proposition as it is to find against it.

The Veteran's claims file, to include a complete copy of this REMAND, must be provided to the examiner designated to examine the Veteran, and the examination report should note review of the file.

5. Schedule the Veteran for a VA psychiatric examination. The examiner should determine the diagnoses of any currently manifested psychiatric disability. The diagnosis(es) must be based on examination findings, all available medical records, and any special testing deemed appropriate. If a diagnosis of PTSD is deemed appropriate, the examiner should specify (1) whether the verified stressor was sufficient to produce PTSD; and (2) whether it is at least as likely as not (a probability of 50 percent or greater) that there is a link between the current symptomatology and the in-service stressor found sufficient to produce PTSD by the examiner. If, and only if, PTSD is found to be related to active service, the examiner should address whether polysubstance and alcohol abuse, which has manifested during the period of time covered by this claim, is due to or aggravated (i.e., worsened beyond the natural progress) by PTSD. If aggravation is found, the examiner should address the following medical issues: (1) the baseline manifestations of the Veteran's alcohol dependence found prior to aggravation; and (2) the increased manifestations which, in the examiner's opinion, are proximately due to PTSD.

If the examiner does not find that the Veteran currently has PTSD, the examiner should address whether the PTSD diagnosis, included in a VA mental health note of December 2012, resulted from the verified stressor; and (2) whether it is at least as likely as not (a probability of 50 percent or greater) that there is a link between the PTSD and the in-service stressor.

The examiner also should address whether any diagnosed psychiatric disability other than PTSD, including the depressive disorder, is at least as likely as not related to service or had its onset in service. In so doing, the examiner should attempt to reconcile the multiple psychiatric diagnoses and/or assessments of record, including major depression, dysthymia, and substance-induced mood disorder. See, e.g., December 2004 VA treatment records, and January 2014 VA Addendum report. Specifically, the examiner should opine as to:

(a) whether it is at least as likely as not (50 percent probability or more) that any diagnosed psychiatric disability either had its onset in service, or is the result of disease or injury incurred during service, to include the verified in-service stressor reported by the Veteran; and 

(b) whether it is at least as likely as not (50 percent probability or more) that the Veteran's service-connected sleep disorder (1) caused or (2) aggravated (i.e., permanently increased in severity beyond the natural progress) any diagnosed psychiatric disability found to be present, beyond the natural progress. 

The examiner is asked to explain the reasons behind any opinions offered. The examiner is also reminded that the term "as likely as not" does not mean "within the realm of medical possibility," but rather that the evidence of record is so evenly divided that, in the examiner's expert opinion, it is as medically sound to find in favor of the proposition as it is to find against it.

If the examiner is unable to provide a requested opinion without resorting to speculation, the examiner should explain why.
 
The Veteran's claims file, to include a complete copy of this REMAND, must be available to the examiner designated to examine the Veteran; and the examination report should note review of the file.

6. If the Veteran does not report for a scheduled examination, obtain a copy of the notice from the Veterans Health Administration informing him of the date, time and location of the examination and associate it with VBMS.

7. After ensuring that the requested actions are completed, re-adjudicate the claims remaining on appeal. If the benefits sought are not fully granted, furnish a supplemental statement of the case (SSOC) and then return the claims file to the Board, if otherwise in order. 

No action is required of the Veteran and his representative until they are notified by the RO or AMC; however, the Veteran is advised that failure to report for any scheduled examination may result in the denial of his claims. 38 C.F.R. § 3.655 (2015). 

The Veteran has the right to submit additional evidence and argument on the matters that the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

These claims must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other 
appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




_________________________________________________
S. S. TOTH 
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2015).