Citation Nr: AXXXXXXXX
Decision Date: 09/30/21 Archive Date: 09/30/21

DOCKET NO. 190923-33144
DATE: September 30, 2021

ORDER

Entitlement to service connection for chronic urinary tract infection, to include urethral strictures, is denied.

FINDING OF FACT

A chronic urinary tract infection, to include urethral strictures, did not have its onset during active service, and is not otherwise related to active service.

CONCLUSION OF LAW

The criteria for service connection for chronic urinary tract infection, to include urethral strictures, have not been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.102, 3.303.

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served in the United States Air Force from October 1970 to May 1974.

The Veteran's appeal falls under the Appeals Modernization Act of 2019. Following the denial of the claim for service connection for urinary tract infection, the Veteran submitted a VA Form 10182, Decision Review Request: Board Appeal, and elected the Hearing docket. This means that the Board may consider only the evidence of record at the time of the agency of original jurisdiction (AOJ) decision on appeal, which was in August 2019, as well as any evidence submitted by the Veteran or his representative at the hearing or within 90 days following the hearing. 38 C.F.R. § 20.302(a). 

In November 2020, the Veteran provided testimony at a virtual Board hearing before the undersigned Veterans Law Judge (VLJ). A copy of the hearing transcript is associated with the claims file. Following the November 2020 hearing, the Veteran submitted a private Disability Benefits Questionnaire. The case is ready for appellate review. 

The Board notes that the private Disability Benefits Questionnaire submitted in December 2020 is for "Male Reproductive Organ Conditions." Ms. Katheryn Vandiver, a nurse practitioner, diagnosed the Veteran with erectile dysfunction, chronic epididymitis, and prostate hypertrophy, along with chronic cystitis and urethral strictures. The Board finds that the diagnoses of erectile dysfunction, chronic epididymitis, and prostate hypertrophy are not part of the current appeal. The Veteran has been very specific in claiming service connection for a chronic urinary tract disability, and the Veteran has been represented by a private agent since submitting the claim for service connection for urinary tract infections in December 2014. See (1) December 2014 VA Form 21-526EZ, Application for Disability Compensation and Related Compensation Benefits (documenting urinary tract system); (2) December 2015 VA Form 21-526EZ, Application for Disability Compensation and Related Compensation Benefits (documenting urinary tract system); (3) June 2016 VA Form 21-0958, Notice of Disagreement (documenting urinary tract system); (4) May 2017 VA Form 9, Appeal to the Board (documenting urinary tract system and urethral stricture); (5) January 2019 VA Form 21-4138, Statement in Support of Claim (addressing chronic urinary tract infections); (6) September 2019 VA Form 10182, Decision Review Request: Board Appeal (listing urinary tract infection); and (7) November 2020 Hearing Transcript (stating that the issue on appeal is service connection for a urinary tract infection). 

The Veteran was not alleging service connection for a reproductive organ disability involving an injury to his testicle during service during the current claim and appeal period. Thus, the Board finds that these disabilities are not part of the current appeal, and the holding in Clemons v. Shinseki, 23 Vet. App. 1, 5 (2009) (per curiam order), does not apply. To reiterate, the Veteran has been represented by an agent throughout the current appeal, and he had not alleged service connection for disabilities outside of the urinary tract system. If the Veteran wants to seek service connection for a male reproductive organ disability, he should submit a supplemental claim for service connection for such disability or disabilities. These disabilities are not addressed within the decision. 

Service Connection

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by service. See 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303(a). To establish a right to compensation for a present disability, a veteran must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Disorders diagnosed after discharge will still be service connected if all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

At the November 2020 hearing, the Veteran testified that he was stationed in Taiwan and was told not to drink the water because it was contaminated. He stated that most of the guys stationed there would have what is called nonspecific urethritis, which is almost the same symptoms as gonorrhea, where you would have discharge and pain when you urinated. He stated he went on sick call in September 1973 because he was having problems, and they did a urinalysis, but they did not put the result of that test in his records. The Veteran testified that they told him he had nonspecific urethritis and that he just needed to stay away from the water. He stated he had been bothered ever since he got out of service in 1974. The Veteran testified that every time he turned around, he would have a urinary tract infection.

The Board has carefully reviewed the evidence of record and finds that the preponderance of the evidence is against the award of service connection for a urinary tract infection, to include urethral stricture. The reasons follow.

As to evidence of a current disability, the Veteran has been diagnosed with urinary tract infections and urethral stricture, and thus there is evidence of a current disability, and the facts establish that the first element of a service-connection claim is met.

As to evidence of an in-service disease or injury, the service treatment records contain a September 1973 record that documents the Veteran underwent a urinalysis test. The results of that test were not documented in the Veteran's service treatment records. The Veteran claims that he had discharge and pain when he urinated. The Board finds that this allegation with the documentation of a urinalysis is sufficient to establish an in-service disease or injury, and thus the second element of a service-connection claim is met. 

However, as to evidence of a nexus between the post-service urinary tract infections and urethral stricture and service, the Board finds the preponderance of the evidence is against this element of a service-connection claim. For example, in the March 1974 Report of Medical History, the Veteran specifically denied a history of frequent or painful urination; kidney stones or blood in urine; and sugar or albumin in urine. The Veteran documented he was currently in good health and taking no medications. The examiner documented that the Veteran denied a history of motion sickness or disturbances of unconsciousness and "all other significant medical or surgical history." These facts are evidence against his allegation of having chronic genitourinary symptoms since September 1973. At that point, it was six months since his urinalysis test, and if he had been experiencing chronic symptoms at that time, the Board finds he would have documented the symptoms. Instead, he denied a history of urinary symptoms. The March 1974 Report of Medical Examination shows that clinical evaluation of the genitourinary system was normal. Thus, by the time the Veteran was being discharged from service, he was not experiencing genitourinary symptoms. 

This finding is further supported by post service treatment records. Within the claims file are private treatment records from Dr. Stephen Connery, who appears to have treated the Veteran from at least 1994 to 2013a period of at least 19 years. There is an April 1994 entry that shows the Veteran complained of urinary burning, frequency, back pain, fever, and chills. The examiner documented the prostate was enlarged and slightly firm but nontender and genitourinary was normal. The urinalysis was documented to be positive, and the examiner diagnosed pyelonephritis, which is a type of urinary tract infection. https://www.niddk.nih.gov/health-information/urologic-diseases/kidney-infection-pyelonephritis. This incident was 20 years after service discharge. The Veteran had been treated in February 1994, March 1994, April 1994, July 1994, and November 1994. Thus, this page of treatment covers nine months, and there is only one entry related to genitourinary symptoms, which does not lend to a finding of chronic urinary symptoms since service discharge. 

Additionally, the Veteran continued to be treated by this physician, Dr. Connery, and/or the practice, which is the Norman Clinic, until at least 2013. Following the one page of treatment showing multiple appointments in 1994, the treatment records skip to 2003, 2004, 2006, 2009, and 2013. From 2003 to 2013, none of the treatment records are documenting ongoing genitourinary symptoms. In the 2009 and 2013 treatment records, the Veteran's past medical history was documented. In the April 2009 record, the examiner listed a past medical history of hypertension, diabetes mellitus, high cholesterol, eustachian tube dysfunction, and esophageal reflux. These same diagnoses under "Past Medical History" were listed in the February 2013 and August 2013 treatment records. Thus, the Veteran's past medical history did not change for a period of four years. There are 15 dates of treatment within these medical records, which cover a period of 19 years, and there is only one record addressing genitourinary symptoms in 1994. These facts do not establish that the Veteran was undergoing continuous treatment for urinary tract infections in the years following service discharge.

Further, within the August 2013 treatment record, the examiner performed a review of systems, which included the genitourinary system, and the Veteran denied dysuria (painful urination) and hematuria (blood in urine). Thus, the Veteran was specifically asked about his genitourinary system, and he denied symptoms, including painful urination. If the Veteran had been experiencing chronic genitourinary symptoms for decades as he has claimed, the Board finds it reasonable to conclude that he would have reported such when the review of systems was performed. This is not a situation where the record is silent for genitourinary symptoms but the Veteran affirmatively denying genitourinary symptoms in August 2013 when a review of systems was performed. At that time, it had been almost 40 years since service discharge. The allegation of chronic urinary tract infections and continuous treatment since service discharge is not supported by the contemporaneous records. 

Further supporting this finding is a June 2014 VA treatment record. The record documents that the Veteran was there to establish care. When addressing the Veteran's past medical history, the examiner included diabetes mellitus, hypertension, hyperlipidemia, cervical spine degeneration, "chronic shoulder pain," right hip arthritis and, "[R]ecent recurrent UTIs since [J]an 2014." The Veteran reported he was asymptomatic at that time but was continuing management with his urologist. The Veteran's report of "recent" recurrent urinary tract infections is consistent with Dr. Connery's treatment records, as the Veteran was not reporting genitourinary symptoms after 1994 and denied genitourinary symptoms in August 2013. Thus, the report of recent recurrent genitourinary symptoms as of January 2014 is consistent with this fact. The Veteran's report of the onset of the recurrent urinary tract infections as of January 2014 is credible, as statements made while seeking treatment tend to be highly reliable, which statement is consistent with the lack of evidence of genitourinary symptoms in the treatment records from the physician who treated the Veteran for at least 19 years. 

Private treatment records dated in October 2014 and November 2014 now included a past medical history of "Kidney/Urinary problems." This further supports the finding that such kidney/urinary symptoms developed after August 2013, since such symptoms were not included in the past medical history in the 2013 records (and specifically denied in August 2013) but then showed up beginning after the Veteran reported to VA in June 2014 that he began having recurrent urinary tract infections in January 2014. Thus, the evidence shows that the Veteran's recurrent urinary tract infection began in approximately January 2014, which is 40 years following service discharge and weighs against a finding that the Veteran developed a chronic urinary disability in service that continued in the years following service discharge.

At the November 2020 hearing, the undersigned had asked the question of whether there was a reason VA or the Veteran could not get records showing urinary symptoms prior to 2014. The Veteran stated that his primary physician and urologist were deceased, which means that the records could not be obtained. 

As a result of the above-described findings, where the Board has very carefully reviewed the post service treatment records to determine whether there is evidence of chronic genitourinary symptoms since service discharge, the Board finds as fact that the allegation by the Veteran of having chronic genitourinary symptoms since 1973 is not credible. 

As a result of this finding, medical opinions based upon the Veteran's report of history are not probative. For example, the Veteran submitted a private Disability Benefits Questionnaire from Richard Herlihy, M.D. in November 2014. Dr. Herlihy wrote that the Veteran had a diagnosis of urinary tract infection (UTI), stricture, and benign prostatic hyperplasia (BPH). Dr. Herlihy stated that the Veteran had a history of UTI that was diagnosed while in Taiwan and continues to have UTIs since with evidence of BPH and strictures. As Dr. Herlihy relied on the Veteran's assertion that his urinary disability had remained chronic since service, Dr. Herlihy's opinion is based on an inaccurate factual premise and, thus, has no probative value. See Reonal v. Brown, 5 Vet. App. 458, 460-61 (1993) (holding that medical opinions based on incomplete or inaccurate factual premises are not probative).

In June 2015, the Veteran submitted a medical opinion from L. Wade Warren, D.O. Dr. Warren stated that after interviewing the Veteran, as well as reviewing his service and post-service medical records, in his expert medical opinion, it is more likely than not that the nonspecific urethritis the Veteran was diagnosed with while in the military in Taiwan 1973 and the current diagnoses of voiding dysfunction documented by Richard Herlihy, M.D., are related. Dr. Warren had documented, "[S]ince [the Veteran]'s time in the military, his chronic urinary problems required continuous management." As Dr. Warren relied on the Veteran's assertion that he had received continuous management of the symptoms since service, Dr. Warren's opinion is based on an inaccurate factual premise and, thus, has no probative value.

In December 2015, the Veteran submitted a private Disability Benefits Questionnaire completed by John W. Ellis, M.D. The Veteran informed Dr. Ellis that while stationed in Taiwan, he developed a discharge and burning from his urethra. The Veteran also stated that he was told the disability was from drinking the local water. Dr. Ellis wrote that since that episode, the Veteran continued to have burning with urination, irritability, and needed to urinate, but was not able to completely empty his bladder. Dr. Ellis stated that it was in his medical opinion that it is more likely than not that the Veteran had an acute episode of a nonspecific urethritis in the service. This caused irritation of the lining of the urethra and his bladder, causing a nonspecific cystitis ever since. Dr. Ellis wrote that the Veteran "has continued to have the long course is consistent with nonspecific urethritis and not a sexually transmitted disease." As Dr. Ellis relied on the Veteran's assertion of chronic symptoms since service discharge, Dr. Ellis' opinion is based on an inaccurate factual premise and has no probative value.

In December 2018, the Veteran submitted a private Disability Benefits Questionnaire completed by James E. Mays, M.D. Dr. Mays wrote that the Veteran had a bladder obstruction, which was due to urethral stricture disease. Dr. Mays also stated that the Veteran was treated for this problem while on active duty. The Board finds Dr. Mays's opinion nonprobative, as he did not provide a rationale for his opinion. A medical opinion without an explanation for that opinion has no probative value. 

As noted above, in November 2020, following the hearing, the Veteran submitted a private Disability Benefits Questionnaire completed by a nurse practitioner. She attributed male reproductive diagnoses to a testicular injury the Veteran had in service. As stated above, male reproductive disabilities are not part of the current appeal, and Ms. Vandiver did not address the likely etiology of the Veteran's urinary tract infections and urethral strictures. Thus, the findings made by Ms. Vandiver within the Disability Benefits Questionnaire are not probative to the appeal. 

VA obtained an opinion in November 2019. The VA examiner reviewed the Veteran's service treatment records and concluded that the urinary disability is less likely than not incurred in or caused by an in-service injury, event, or illness. The examiner stated that a review of the record indicates that the Veteran has a history of urethral strictures and recurrent urinary tract infections. However, the examiner noted that the records are silent for urinary tract infection complaints post-service and there is no documentation of continuity of his condition. 

The Board affords the November 2019 VA examination nexus opinion probative value, as the examiner had reviewed the evidence and provided a rationale that was based upon the facts of the case and medical principles, which facts are the same facts the Board finds are credible. These facts are that the Veteran had a one-time incident in service that involved his urinary tract system but then did not continue to have symptoms in service, as his separation examination and medical history showed the Veteran was not having symptoms at that time, and the Veteran did not continue to have symptoms in the years following service discharge until decades later. The only probative opinion in the file is a negative opinion. The private opinions submitted are not probative either because the examiner based the opinion on in inaccurate factual premise or did not provide a rationale for the opinion. 

Finally, the Board acknowledges that the Veteran submitted a MedlinePlus article "Urinary tract infection adults" in July 2015. Medical treatise evidence can, in some circumstances constitute competent medical evidence. Competent medical evidence may include statements contained in authoritative writings such as medical and scientific articles and research reports and analyses. However, the United States Court of Appeals for Veterans Claims (Court) has held that medical evidence that is speculative, general or inconclusive in nature cannot support a claim. Here, the evidence which has been submitted by the Veteran is general in nature and does not specifically relate to the facts and circumstances surrounding the Veteran's particular case. Notably, while this article discusses urinary tract infections, it is of a general nature and does not discuss the particular facts of the Veteran's case. As such, it is of little probative value in support of the Veteran's service connection claim.

In conclusion, for all the reasons laid out above, the Board finds the preponderance of the evidence of record weighs against the Veteran's claim of entitlement to service connection for a chronic urinary tract infection, to include urethral stricture. As the preponderance of the evidence is against the Veteran's claim, there is no reasonable doubt to be resolved, and the claim is denied.

 

 

A. P. SIMPSON

Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board N. Griffin, Associate Counsel

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.